*Hartford,*
June, 1842.

Beckwith
*v.*
Windsor Man-
ufacturing
Company.

## Beckwith *against* The Windsor Manufacturing Company.

Where the plaintiff in a bill of foreclosure averred, that he indorsed for the defendants sundry notes to the amount of 15,000 dollars, which he had since been compelled to pay, and had paid, and the finding was, that he had paid only two notes amounting to 500 dollars, the residue being outstanding; it was held, that the plaintiff was not thereby precluded from the relief sought.

A vote of a corporation, purporting to authorize its president to execute a mortgage deed in its behalf, need not, in order to confer such authority, be under the seal of the corporation.

Nor is it necessary that such vote should be recorded, with the deed, in the town records.

A contract to receive a reasonable compensation for indorsing the notes of another, payable at banks, is not of itself usurious; though, as such contracts are liable to be perverted to usurious purposes, they are to be viewed with great jealousy.

In such case, the intent of the parties in making the contract, must govern; and that intent is a matter of *fact*, proper to be submitted to the jury; the court having no rule by which to determine, as matter of *law*, what compensation may be lawful, and what usurious.

Where it was agreed between *A* and *B*, that *A* should indorse *B's* notes, payable at the banks, from time to time, as *B* should require, for the term of one year, to an amount not exceeding in the whole, at any one time, the sum of 15,000 dollars, and should also, during that time, advise *B's* agent respecting his financial affairs, as far as he could consistently with his other engagements; and for *A's* indorsements and services, *B* was to pay him a sum equal to 6 *per cent. per annum* on the amount of his indorsements, from the time such notes were given until they should be taken up by *B ;* and it was found, that the contract fairly expressed the intention of the parties; that it was not designed by them to be a contract for the loan of money; and that the sum stipulated to be paid to *A*, for his indorsements and services, was no more than a fair and reasonable compensation therefor, having reference to the general embarrassments of the country at the time, and the kind of security agreed to be given: it was held, 1. that the contract was not, upon its face, usurious; 2. that the presumption resulting from the terms of the contract,—and especially the peculiar manner in which *A's* remuneration was to be made,—that it was designed as a cover for a usurious loan, was repelled by the finding.

This was a bill in chancery seeking a foreclosure of mortgaged premises. The bill stated, that on the 7th of *March,* 1840, the defendants, a body corporate, being indebted to the plaintiff, by a penal bond, in the sum of 20,000 dollars, to secure the payment thereof, mortgaged to the plaintiff a certain lot of land at *Windsor Locks,* with the brick paper manufactory and other buildings thereon, and the machinery in said buildings [specifying the articles,] the condition of said

bond and mortgage deed being, that the defendants pay to the plaintiff all notes he should indorse for them, for a period of one year, not to exceed in amount the sum of 15,000 dollars; and that afterwards, on or about the 1st day of *April*, 1840, the plaintiff did indorse for said company sundry notes to the amount of 15,000 dollars and upwards; which said notes he has since been compelled to pay, and has paid; no part of which has been repaid, by said company, but is still due to the plaintiff.

*Hartford,*
June, 1842.

Beckwith
*v.*
Windsor Man-
ufacturing
Company.

The superior court, at the *September* term, 1841, appointed *Dennis Kimberly*, Esq., a committee, to hear the parties, and to find and report the facts in the case. At the next term of the court, the committee, having heard the parties, made his report, finding the following facts.

The defendants were incorporated, by an act of the General Assembly, passed at their session in 1838, for manufacturing purposes, with the powers and privileges usually granted to corporations for those purposes.(*a*) The only clause in the charter, which, in this case, it is material to recite, is the following : "A majority of the directors shall, on all occasions, when met, constitute a board for the transaction of business."

On the 1st of *March*, 1840, the defendants, in the transaction of their lawful business, had become largely indebted, were greatly embarrassed in their pecuniary affairs, and were in low credit, and unable to meet their liabilities and continue their business, without pecuniary assistance. Being desirous of procuring a loan, to the amount of 15,000 dollars, (with which sum, together with their other available funds, it was then believed they would be able to go on with their business, and meet their pecuniary engagements,) they made application to the plaintiff for a loan of money to that amount; and proposed to secure him therefor, by a mortgage of the premises described in the bill. The plaintiff was then a broker in the city of *Hartford*, possessed of a large property, in high credit at the banks in that city and elsewhere, and abundantly able to make the loan. He was, at the same time, a stockholder in said company, and perfectly acquainted with the situation and condition thereof. He declined loaning

(*a*) See Private Acts of *May* session, 1838, *p.* 76 and *seq.*

*Hartford,*
June, 1842.

Beckwith
*v.*
Windsor
Manufacturing
Company.

to the company said sum of money, or any other sum, on the ground, that he could do better with his money than to lend it at 6 *per cent.*, the legal rate of interest in this state.   Between the 1st day of *March,* 1840, and the 7th day of that month, divers propositions were made, and negotiations had between him and the company, relative to his rendering the company pecuniary aid and personal services, and finally, on the 7th of *March,* the following contract was entered into between him and the company :

"It is agreed between the *Windsor Manufacturing Company* and *Alonzo S. Beckwith* as follows :

"Said *Beckwith* will endorse for said company, from time to time, as they may require, for the term of one year from this date, to an amount not exceeding in the whole, at any one time, the sum of fifteen thousand dollars ; and will also, during said term, advise the agent of said company respecting their financial affairs, so far as said *Beckwith* can conveniently do, without prejudice to his other engagements.

"For his said endorsements and services, said company are to pay said *Beckwith* a sum equal to six *per cent. per annum* on the amount of his said endorsements, from the time of his giving said endorsements until the time that such endorsed paper is taken up by said company.

"As security to said *Beckwith* for the above services and liabilities to be assumed by him, the said company are to execute a bond, in proper form, secured by a mortgage of all their real estate and machinery, and assign to him their policies of insurance thereon, which said company are to continue in force to an amount not less than twenty thousand dollars.

"Said company are also to execute a power to said *Beckwith, David F. Robinson* and *Francis Parsons,* to sell the property so mortgaged, in any reasonable manner, at their discretion, at the end of fifteen months from this date, provided any of the paper so to be endorsed by said *Beckwith* shall then be unpaid, by the makers thereof, and in the hands of said *Beckwith,* or he liable therefor ; and the avails shall first be applied in payment of said outstanding notes, and the balance accounted for to said company.

"In witness whereof, said company, by *Hezekiah Huntington,* Jr., president thereof, and duly authorized thereto, by a vote of the directors of said company, hath subscri-

Hartford,
June, 1842.

Beckwith
v.
Windsor
Manufacturing
Company.

bed his name in their behalf, this 7th day of *March*, A. D. 1840.

> *Hezekiah Huntington*, Jr., President, &c.
> *A. S. Beckwith.*"

At that time, the company owned and possessed the property described in the bill, which was free of incumbrance, and was supposed to be ample security for the services and liabilities to be assumed by the plaintiff, by virtue of said contract. In addition to this property, the company then possessed other available funds, to the amount of 5 or 6 thousand dollars.

At a meeting of the directors of the company, holden at *Hartford*, on the 7th of *March*, 1840, by adjournment from the 2nd day of that month, a vote was duly passed, authorising *Hezekiah Huntington*, Jr., president of said company, in behalf of said company, to sign, seal and duly execute the contract above recited; also a bond from said company to said *Beckwith*, for the performance of their said agreement, and a mortgage of the real estate and machinery of said company, situate at *Windsor Locks*, for the security and faithful fulfilment of said bond. This vote was duly recorded in the records of the company.

By virtue of this power, *Hezekiah Huntington*, Jr., the president of the company, executed the contract in the manner appearing on its face, and also signed and sealed with the corporate seal of the company, and delivered to the plaintiff, a bond pursuant to the contract. He then, by virtue of the same vote, in behalf of the company, executed, sealed with the corporate seal of the company, and delivered to the plaintiff, a mortgage deed of the premises, the condition of which was as follows : " Whereas the grantors have executed to said *Beckwith* their bond of even date, in the penal sum of 20,000 dollars, conditioned to be void, provided they pay to said *Beckwith* any and all notes he may endorse for said company, for a period of one year, not to exceed in amount, at one time, the sum of 15,000 dollars ; now, if said company keep and fulfill the conditions of said bond, and save said *Beckwith* harmless from said endorsements, then this deed to be void, otherwise to continue in force."

The above-mentioned vote of the directors never was recorded in the land records of the town of *Windsor ;* nor was it, or any copy thereof, ever sealed with the corporate

*Hartford,*
*June, 1842.*

*Beckwith*
*v.*
*Windsor*
*Manufacturing*
*Company.*

seal of the company and delivered to the plaintiff. All the directors of the company were present, and acted, at said meeting on the 2nd of *March*, and also at the adjourned meeting on the 7th of *March*. It did not appear, however, that either of said meetings was convened pursuant to the 3rd article of the by-laws of the company then in force, which was as follows: " The president, or any two of the directors, may, at any time, call a meeting of the directors, by leaving a written notice of the time and place of such meeting at their usual place of abode or business, at least one day previous thereto." Nor did it appear how, or by whom, or for what purpose, the directors were so convened.

At a meeting of the *Windsor Manufacturing Company*, holden at *Hartford*, on the 7th of *March*, 1840, a vote was passed by said company, and recorded, authorizing *Hezekiah Huntington*, Jr., president of the company, to sign, seal and duly execute a power of attorney to *Alonzo S. Beckwith, David F. Robinson* and *Francis Parsons*, empowering them to sell and convey all the real estate and machinery of the *Windsor Manufacturing Company*, should the same become necessary, agreeably to said contract with said *Beckwith*, and to apply the avails, so far as might be necessary, on any claims that might be due to said *Beckwith* under said contract. On the 10th of *March*, a power of attorney was executed pursuant to this vote.

Within the year next succeeding the 7th of *March*, 1840, the plaintiff, from time to time, as required by the company, endorsed their notes to the amount of 15,000 dollars. During that period, he also, at the request of the company, and pursuant to said contract, rendered important and valuable services for the company. The notes so endorsed by him, were discounted at the several banks in the city of *Hartford*, and the proceeds thereof were passed to the credit of said company. When said notes became payable, said company neglected to pay them, and they were duly protested for nonpayment, of which due notice was given to the plaintiff; who, before the bringing of this suit, paid two of them, *viz.* one note of 350 dollars, and another of 150 dollars. The remainder of said notes now remain due and unpaid, in the hands of the holders thereof; and the plaintiff is bound to pay them, with the interest thereon.

The contract of the 7th of *March*, 1840, above recited, is the only contract, and the whole contract, of the parties thereto relative to the subject matter thereof; and it fairly expresses the intentions of the parties thereto, on such subject matter. The committee did not find, that said contract was designed by the parties thereto, to be a contract for the loan of money, unless such design be necessarily inferrible from the terms of the contract. It was found, (if the opinions of witnesses skilled in financial matters be admissible evidence to that effect, otherwise it was not found,) that the sum stipulated in said contract to be paid to the plaintiff for his endorsements and services, as therein mentioned, was no more than a reasonable and fair compensation for such endorsements, having reference to the general commercial embarrassments of the country at the time, and to the kind of security agreed to be given therefor.

The plaintiff has received of said company, in cash, and in sundry articles of merchandize, the sum of 739 dollars, 59 cents, for his endorsements so made to said company, in pursuance of said contract.

The court accepted the report of the committee, and reserved the case for the advice of this court.

*Hungerford* and *Parsons*, for the plaintiff, contended, 1. That the mortgage deed was legally executed.

In the first place, it was not necessary for the company to affix their seal to their vote authorizing the execution of the deed. This was directly decided in *The Savings Bank* v. *Davis & Center*, 8 *Conn. Rep.* 191. This decision has become the law of this state, and has been acted on ever since it was made. Numberless conveyances have been made in conformity to it. To overturn it now, would produce infinite mischief. An agent of a corporation may be legally appointed by a resolution in their minutes. *Randall* v. *Van Vechten*, 19 *Johns. Rep.* 65.

Secondly, it was not necessary to record the vote in the *town* records. The decree of a court of probate authorizing a conveyance of real estate, is never recorded in the town records.

Thirdly, the meeting of the directors, when the vote was passed, was a legal meeting. By an express provision of the

*Hartford,*
June, 1842.

Beckwith
*v.*
Windsor
Manufacturing
Company.

*Hartford,*
*June, 1842.*

*Beckwith*
*v.*
*Windsor*
*Manufacturing*
*Company.*

charter, a *majority* of the directors, on all occasions, when met, constitute a board for the transaction of business. Here, not only a majority, but *all* the directors were present and acted. The by-law does not purport to, (and, if otherwise, it *could not,*) counteract the charter. It authorizes the president, or any two of the directors, to *call* a meeting, and prescribes the mode ; but it does not say, that other meetings, such as the charter authorizes, may not be held. All the directors, being met, certainly constituted a legal meeting under the charter, let them have come together as they might.

2. That the contract was valid.

In the first place, the committee has found, that this was not a contract for the loan of money—*i. e.* that it was not usury—unless necessarily inferred from the contract itself. This cannot be inferred, because the contract does not, upon its face, import or imply a loan of money by the plaintiff, but an arrangement for indorsements.

Secondly, no inference can be drawn, that it was intended as a cover for usury, because it is found, by the committee, that the contract, and the whole contract between the parties, is contained in the writing.

Thirdly, the fact that a power of attorney was given in connexion with the contract to sell the property for the payment of the notes indorsed, as a matter of evidence, strongly repels the presumption of its being intended as a cover for a usurious loan—even if the presumption were not conclusively repelled by the finding.

Fourthly, the compensation to be paid to the plaintiff, was as well for his services as for his indorsements ; and it does not appear, but that his services constituted the principal item in the consideration, on the plaintiff's part. The contract, therefore, is not usurious. *Bartlett* v. *Williams*, 1 *Pick.* 288. *Auriol* v. *Thomas*, 2 *Term Rep.* 52. *Winch*, q. t. v. *Fenn*, *ibid.* n. *Hutchinson* v. *Hosmer*, 2 *Conn. Rep.* 241. *Tuttle* v. *Clarke*, 4 *Conn. Rep.* 153. *De Forest* v. *Strong*, 8 *Conn. Rep.* 513.

*Field* (of *New-York,*) and *Chapman*, for the defendants, contended, 1. That the plaintiff's bill must be dismissed, because the committee has found the material allegation, that

the plaintiff has paid the notes, untrue. A plaintiff can no more obtain relief in equity than he can recover at law, otherwise than *secundum allegata et probata.* Here the bill avers, that the plaintiff has been obliged to pay, and *has paid,* the notes. The finding is, that he has paid two small notes, amounting to 500 dollars, out of 15,000 dollars, and is *liable* to pay the residue, which are still *outstanding.*

*Hartford,*
June, 1842.

Beckwith
*v.*
Windsor
Manufacturing
Company.

2. That the holders of these outstanding notes must be made parties to the bill ; otherwise, the plaintiff is not entitled to a decree on account of his liability as indorser.

3. That the mortgage deed was not duly executed.

In the first place, the vote conferring authority upon *Huntington* to execute the deed, should have been *under seal.*

Secondly, the vote or power, under which *Huntington* claimed to execute the deed, should have been *recorded* with the deed. *Stat.* 391. (ed. 1838.)

4. That the deed is void, because the contract is an usurious one. It is to be kept in mind, that the province of a committee in chancery, like a jury in suits at law, is, to find facts, and facts only ; and it is the exclusive province of the court to draw the legal conclusion from such facts. It is also material to observe, that the plaintiff was a member of the company ; and must, therefore, be presumed to be acquainted with their wants and objects. Now, it appears, first, that what the company wanted, was a *loan of money ;* and this was what they applied for. Secondly, they obtained a loan of money. Thirdly, this loan was obtained on their agreement with the plaintiff to pay more than lawful interest, for the time they had the money. Upon these facts, it is matter of *law,* that the transaction was usurious.

But it is objected, that the plaintiff was to loan no money ; that the money raised was not to come from him ; that what he agreed to do, was not to make a loan, but to do something essentially different.

We answer, first, that it is immaterial, as to the question of usury, whether the money was to come from his pocket, or from the vaults of the bank. *Reed* v. *Smith,* 9 *Cowen,* 647. 651. *Wade* q. t. v. *Wilson,* 1 *East,* 195. *Manners* q. t. v. *Postan,* 3 *Bos. & Pul.* 343.

Secondly, a perfected stipulation for a loan, was not essen-

*Hartford,*
*June, 1842.*

Beckwith
*v.*
Windsor
Manufacturing
Company.

tial; it being sufficient that there was a *treaty for a loan.* *Bank of the United States* v. *Owens* & al., 2 *Pet.* 527. 537.

Thirdly, it was not necessary that the loan should be of *money;* a loan of *credit,* for the purpose of raising money, being sufficient. This may be done by *accepting a bill.* *Kent* v. *Lowen,* 1 *Campb.* 178. By an *exchange of notes.* *Dunham* v. *Gould,* 16 *Johns. Rep.* 367. *Dunham* v. *Dey,* 13 *Johns. Rep.* 40. Or, as it is in this case, by *indorsing* the borrower's notes. *Steele* v. *Whipple,* 21 *Wend.* 103. A man can no more lend his indorsement for a compensation beyond the legal rate of interest, than his money. Though it is not cash itself, it is an equivalent. *Id.* 105.

It is further objected, that the finding negatives a usurious intent. We answer, that the only question of intent within the province of the committee, is, *intent to do the acts.* All beyond this, is *an inference of law.* If the party has intentionally done the acts which constitute usury, from motives ever so pure, the law will pronounce the transaction corrupt and usurious. *The New-York Fireman Insurance Company* v. *Ely* & al. 2 *Cowen,* 706., and cases cited *ibid.*

Lastly, it is objected, that the compensation the plaintiff was to receive, was for his *services.* The finding does not say so, in terms; and the case affords a contrary inference; for the amount of compensation was not to depend upon the amount of service, but on the amount of the notes indorsed, and the time they had to run. To make this objection available, it must be shewn, that the compensation was *exclusively* for services. This has not been claimed.

WAITE, J. Several objections have been made, by the defendants, against a decree in favour of the plaintiff in this case.

1. It is claimed, that a material allegation in the bill is not supported by the finding of the committee. It is averred, that the plaintiff endorsed for the company sundry notes to the amount of fifteen thousand dollars, which he has since been compelled to pay, *and has paid;* and the committee has found, that the plaintiff has paid only two notes, amounting to five hundred dollars.

But this payment shews, that there has been a breach of the conditions of the bond and mortgage deed, and gives the plaintiff a right to bring his bill for a foreclosure. The cash

and articles of merchandize received by him of the company, were not received in satisfaction of that payment, but for his endorsements made for the company, and consequently, do not preclude the plaintiff from the relief prayed for.

*Hartford,*
June, 1842.

Beckwith
*v.*
Windsor
Manufacturing
Company.

2. It is next insisted, that the authority given to the president to execute the mortgage deed, was not under seal, and was not recorded.

These questions, it is admitted, were directly decided in the case of *The Savings Bank* v. *Davis & Center,* 8 *Conn. Rep.* 191. But it is claimed, that that decision is erroneous; and as it was made upon a divided opinion of the two judges, the questions are still open for revision.

If we considered ourselves at liberty to review that decision, we are by no means satisfied we should not come to the same result. What, in the present case, is the vote passed by the directors, but a manifestation of their assent to the mortgage, and a direction to the proper officer to make it? The deed is executed in the name of the corporation, as their deed, and has the corporate seal affixed. The corporation could only act, in making the conveyance, by some agent or officer of theirs; and were it necessary for the vote to be executed with the same formality as the deed, a similar difficulty would arise in the execution of *that.* The certificate annexed to the signature of the president, that he was duly authorized, is but an assertion that the execution was authorized by the company, and so their deed.

As to the recording of the vote upon the town records, *that* is never required. The authority given by courts of probate to guardians and executors to sell, is never, by our practice, recorded upon the records of the town. The statute requiring a power of attorney, under which a deed is executed, to be recorded with the deed, has never been considered as extending to such cases.

But we deem it unnecessary to enter into a discussion of the reasons that may be urged in support of that decision. It is enough for our purpose, that is has been made by the highest court in this state, and according to the provisions of our statutes. And although made by a court composed of only two judges, and those differing in opinion, we see no sufficient cause for a change in what has been considered the law upon this subject.

The rule established in that case has become a rule of

*Hartford,*
*June, 1842.*

*Beckwith*
*v.*
*Windsor*
*Manufacturing*
*Company.*

property. Corporations and individuals in the various conveyances subsequently made, have, doubtless, acted in conformity with the principles there established, relying upon their correctness. Even the very deed now under consideration, it is admitted, is executed in conformity with these principles. And should the rule now be changed, it is impossible for us to foresee how many titles might be shaken. The maxim *stare decisis* applies in this case with peculiar force.

3. But the most material question remains to be considered; and that is, whether the contract made between the plaintiff and the company was usurious, and therefore void.

It was agreed that the plaintiff should endorse for the company, from time to time, as they might require, for the term of one year, to an amount not exceeding in the whole, at any one time, the sum of fifteen thousand dollars, and should also, during that time, advise the agent of the company respecting their financial affairs, as far as he could, consistently, without prejudice to his other engagements. And for his endorsements and services, the company were to pay him a sum equal to six *per cent. per annum*, on the amount of his endorsements, from the time of giving them until such indorsed paper should be taken up by the company.

Is this contract *upon its face* usurious, and as *a matter of law,* void; or only *evidence* to be submitted to a jury, for them to say with what *intent* it was made? That it raises a very strong presumption, that it was designed as a cover for an usurious loan, there can be no doubt; and unless satisfactorily explained, would justify such an inference. But still, is it conclusive evidence, admitting of no explanation as to the honesty and fairness of the transaction? This is claimed by the defendants. And they insist, that the contract, by which the plaintiff was to receive a compensation for endorsing the notes of the company, was usurious; and they refer us to the case of *Steele* v. *Whipple,* 21 *Wend.* 103.

We cannot, however, yield our assent to that doctrine. Aside from authority, we are not satisfied that it is usurious for a person to receive a reasonable compensation for endorsing notes payable at banks. He may deem it necessary to keep his funds in a situation to meet his liability, in case the principal should fail to pay. He may thereby be prevented from using them as he otherwise might wish to do. We can-

not, therefore, say, that it is unjust or improper for him to stipulate for a reasonable compensation for the trouble, responsibility and inconvenience attending such an undertaking.

*Hartford,*
June, 1842.

Beckwith
*v.*
Windsor
Manufacturing
Company.

Still, as such contracts are so liable to be perverted to usurious purposes, they are to be viewed with great jealousy. And especially, as in this case, where the contract gives the endorser power to convert any payment which he may make upon the notes indorsed, with his trouble for endorsing them, into that which is equivalent to a loan at twelve *per cent. per annum*, until the debt is paid, the conclusion that the contract was made as a cloak for usury, is almost irresistible.

Nevertheless, if the law be, as we consider it, that an endorser may lawfully stipulate for a reasonable compensation for his trouble, then the question becomes one of fact, as to the intent of the parties. The court has no rule by which to determine, as matter of law, what compensation may be lawful, and what usurious.

That such a stipulation may legally be made, we think is clearly inferrible from decisions already made in this state. Thus, where a note for 950 dollars was given for the loan of 850 dollars, and a charge of 100 dollars for the trouble and expense of procuring the money for the borrower from the banks, the contract was holden not to be necessarily usurious. The question whether the transaction was fair and *bona fide*, or a cover for usury, was submitted to the jury;—and they having found in favour of the validity of the transaction, judgment was rendered accordingly. *Hutchinson* v. *Hosmer*, 2 *Conn. Rep.* 341.

So where an agreement was made with commission merchants, by which they were to charge two and a half *per cent.* and lawful interest upon money by them advanced upon acceptances made for the accommodation of the drawers, it was left to the jury to say, whether the contract was intended as a cover for an usurious loan, or only as a fair compensation for the trouble of providing for and meeting acceptances, which it was the duty of the drawers to pay; and the jury having found in favour of the commission merchants, the contract was enforced. *De Forest* v. *Strong*, 8 *Conn. Rep.* 513.

From the principles recognized by this court, in the cases cited, it seems to follow, that the question arising in this case,

*Hartford,*
*June, 1842.*

Beckwith
*v.*
Windsor
Manufacturing
Company.

as in those, is one of *intent*—a question of fact proper for the consideration of a jury :—was the contract intended by the parties as a cover for usury, or was it made for the sole purpose of giving the plaintiff a fair remuneration for his services?

But this question has already been referred to a committee to find and report, not the *evidence*, but the *facts* in the case. His finding is analogous to the finding of a jury in an action at law. Now, the report states, that the contract fairly expresses the intention of the parties ; was not designed by them to be a contract for the loan of money ; and the sum stipulated to be paid to the plaintiff for his indorsements and services, was no more than a fair and reasonable compensation for such indorsements, having reference to the general embarrassments of the country, at the time, and the kind of security agreed to be given.

Is the contract thus explained by the committee, and as we are now bound to understand it, usurious ? If it was no contract for a loan, and nothing more than a stipulation for a fair remuneration for services to be rendered, can we be justified in holding it void ? We think not. And although we have experienced some difficulty in coming to this result, in consequence of *the peculiar manner* in which that remuneration was to be made, yet we do not see, but that upon the facts found by the committee, and the principles already established by this court, the plaintiff is entitled to a decree in his favour.

Should it be said, that great danger may be apprehended from the perversion of such contracts to usurious purposes, the answer is, that whenever they are so perverted, they will be void. The intent of the parties in making the contract must govern ; and that is a question of fact, to be determined by that tribunal whose business it is to pass upon such matters ; and if an usurious intent is found, it will vitiate the contract.

We therefore advise the superior court, that the plaintiff is entitled to a decree in his favour.

Storrs and Hinman, Js., concurred in this opinion.

Williams, Ch. J., and Church, J., gave no opinion, being disqualified by relationship to persons interested in the event of the suit.

Decree for plaintiff.