E. C. WHITE, Appellant, v. M. O. ANDERSON, Respondent.

Kansas City Court of Appeals, May 13, 1912.

1. **USURY: Loan: Concealed.** A loan is the foundation upon which a charge of usury must rest, and if this element does not appear in the transaction, usury is not in it, no matter what may be the price exacted. The law will get under and expose any disguise in its quest for usury.

2. ————: ————: **Credit: Guarantor: Indorser.** One may pledge his credit for another by way of guaranty, indorsement, or otherwise, and charge what he likes without being guilty of usury, if he has no interest in the loan.

3. ———: ———: Coupon Tickets: Merchandise: Credit.  A
party carried on the business of selling coupon ticket books
to persons who could not obtain credit at stores, with which
any kind of merchandise might be purchased of merchants to
whom the books were addressed.  The purchaser of the book
would give his note, due in thirty days, for the price of the
book plus five per cent, with eight per cent interest from
maturity.  The party issuing the coupon books would settle
with the merchants to whom they had been addressed and
who had taken them up by furnishing merchandise, by paying
to the merchants the amount called for, less ten per cent.  It
was *held*, that this was not a sale of credit for a rate per cent
commission, but was, in reality and effect, a loan to the person
purchasing the coupon book, and was usurious.

Appeal from Pettis Circuit Court.—*Hon. H. B. Shain,*
Judge.

AFFIRMED.

*G. W. Barnett* for appellant.

*Geo. W. Anamosa* for respondent.

ELLISON, J.—This is a contest in replevin for
a horse which defendant mortgaged to plaintiff, and
plaintiff's right depends upon the validity of the mort-
gage.  The judgment in the trial court was for the
defendant.

The mortgage was given to secure the payment
of two promissory notes, each for ten dollars and fifty
cents due in thirty days with eight per cent interest
from maturity.  The case was submitted to the court
without a jury.  It appears that plaintiff conducts a
general business in Sedalia under the name of the
"Credential Coupon Trading Company," whereby he
issues a small book of coupon tickets, for a sum not
exceeding ten dollars, to those who desire to purchase
clothing, groceries, etc., at certain designated stores
in that city.  A person without credit of his own at
the store where he wishes to make purchases, will pur-

chase of plaintiff one or more of these coupon books and, as in this case, give his note or notes, due in thirty days, to plaintiff, for the amount represented in the coupon book with five per cent in addition. Thus, if he wishes to make purchases amounting to twenty dollars, as in this case, he will get two coupon books with coupon tickets in each aggregating ten dollars, for which he will execute his two notes, as in this case, for ten dollars and fifty cents each. He may then go to the stores and make purchases, paying with tickets out of his book, the merchant making no charge to him. The merchant retains all tickets thus received by him, charging them to plaintiff, and the latter pays, or redeems, them by paying ten per cent less than the sum total of the tickets. Thus, if a certain merchant has one hundred dollars in tickets, plaintiff may take them up, in accordance with an understanding he has with the merchant, by paying ninety dollars in money.

Defendant was in need of an overcoat and was without money and had no credit at the clothing stores, and applied to plaintiff for two of his coupon books of ten dollars each, and executed as security for the payment thereof his two promissory notes for ten dollars and fifty cents each, secured by the chattel mortgage as has been already stated. With these he went to one of the stores which, under an agreement with plaintiff, take up his tickets, and bought an overcoat for twenty dollars, and plaintiff afterwards redeemed them from the merchant by paying eighteen dollars, thus receiving his ten per cent discount, as agreed with the merchant. It is, however, agreed that the price charged defendant by the merchant was the proper retail price, it being admitted that the coat was "of the value of twenty dollars." It was further admitted that the matter of time defendant's notes were to run was not taken into consideration as a basis of the amount of commission to be paid plaintiff; it being admitted "that plaintiff's terms to every person to

whom credit and accommodation of like character were and are extended are five per cent on the total amount or value furnished to any person whether the time to elapse before settlement be for one day, or for six months, or one year, or any other time as might be agreed upon.''

The coupons could not be used as money, nor received in payment of the holder's debts, nor for any purpose other than the purchase of merchandise.

From this statement it is seen that plaintiff was compensated in these transactions by five per cent of the amount of the coupon book, received from the purchaser, and ten per cent of the sale price of the goods, received from the merchant; and the question for decision is, is this usury?

It is said in State ex rel. v. Boatmen's Savings Inst., 48 Mo. 189, that, ''In order to constitute usury there must be an express or an implied loan.'' [Coleman v. Cole, 158 Mo. 253.] Our statute (Sec. 7182, R. S. 1909) includes ''the forbearance,'' as well as the use of money; so that though a note might not be usurious before maturity, it might become so by forbearance at an unlawful rate, after that. If there is a loan in which there is more profit secured to the lender than the rate of interest allowed by law, the courts will pronounce it usurious however well disguised and concealed it may be. [Missouri Real Est. Syndicate v. Sims, 179 Mo. 679.] We have had occasion to say the ingenuity of men has been put to the test in devising ways for evading the usury law, and the courts are found ever ready to thwart all efforts in that direction. Money is so indispensable to the use of men, its value and convenience are so alluring— the temptation to acquire it so great—that the law has guarded against imposition so readily practiced upon the needy and the improvident. It is a singular phase of human nature that the shrewdest and wariest trader loses his cunning when he assumes the role of a bor-

rower, and becomes an easy victim to the usurer. But whatever the reason, the law will permit one to sell his horse for whatever he may get without fraud or deceit, or to hire out his vehicle or his labor for whatever the hirer will pay, yet when it comes to the hire of money, the utmost circumspection is required by the law to protect the improvident or the needy borrower. The prohibition of the law is, however, confined to cases of loans whereby greater than the prescribed rate of interest is sought. If it has not in it the element of a loan, there canot be usury. Any real (not pretended) sale is not usury, however great the per cent of profit. Usury and that species of exorbitance from which equity sometimes relieves, viewed from a legal standpoint, are wholly unlike and belong to different branches of the law. It is common knowledge that there are sales of many kinds of merchandise where there is a hundred and more per cent of profit.

It has been held that the sale, in good faith, of an indorsement, the purchase price being three per cent of the amount of the note, was valid. [Ketchum v. Barber, 4 Hill 224; Beckwith v. Windsor Mfg. Co., 14 Conn. 594.] And that there might be a valid sale of a guaranty at whatever price. [More v. Howland, 4 Denio 264.] So it is familiarly known that much of the business of the country is carried on by the sale of notes at whatever per cent of discount is agreed upon, with no thought of the objection of usury.

So undoubtedly one may sell his credit as he would any other species of his property. If, for instance, A should come to B and say, I want to borrow $100 from C, who fears to trust me, and if you will sign as my security I will pay you five dollars and B does so, having no interest in the transaction except as stated, why is it not a legal contract? B is not interested in the loan, nor does he get any interest on it. And it could make no difference that C had promised to pay

B five per cent of the loan instead of a named sum. In a leading case in New York it was said that, "neither sales of credit nor loans, or sales of property, other than money are touched by the statute. It is not enough that the vendee wants money, and that this is known to the opposite party. Neither the necessities of the vendee, nor the use he contemplates making of his purchase, will deprive the vendor of his right to determine for himself the terms upon which he will part with his property. His conduct may be oppressive; but all extortion is not usury. Nor can a penal statute, designed to correct a particular evil, be made a remedy for the violation of all duties of imperfect obligation." [Dry Dock Bank v. Amer. Life Ins. Co., 3 Const. 344.] The same rule is stated in Brown v. Harrison, 17 Ala. 774. In Ketchum v. Barber, supra, 1. c. 234, after a review of the authorities, Ch. J. Nelson said: "We may, I think, safely conclude that a guaranty of paper unconnected with a loan, and really and *bona fide* intended to be what it purports to be on its face, viz., a security for payment . . . is not obnoxious to the imputation of usury, even if a commission of more than legal interest be agreed upon and taken for the same." Again, at page 235, he said that: "An extravagant charge for a guaranty, purely as such, is no more usury within the sense and meaning of the law, than if exacted or given for any article of commerce. The price of a note, bill or bond, bought in the market, is but so much given for the credit of a name; and this is an every day transaction."

In Dunham v. Dey, 13 John. 40, 48, the court saw nothing improper in an endorser or a surety taking a percentage "for advancing their responsibilities."

We cannot see that the facts in this case put it in any of the foregoing classes. It is said to be a mere sale of credit. If it were, we could well sustain a price which, in a loan, would be usury. But we think it not a mere sale of credit. A lack of credit in defendant

induced the transaction resulting in a loan of money at a forbidden hire. When defendant bought his book of credit coupons, he was enabled to use it in payment for the purchase price of goods. *He* did not owe for the goods, but *plaintiff* did. The transaction was no less than if plaintiff had gone to the store with defendant and then and there paid the merchant for the coat and taken defendant's note just as he did take it. That defendant gave his note to plaintiff and received from him the coupon orders for goods (and that, in reality, is what they were) before going to the store, does not influence the fact that he bought and paid for the goods with plaintiff's money; and that plaintiff paid the money over to the merchant instead of defendant, cannot relieve the transaction of its true character, since it would have been idle to hand the money to defendant and then see that the latter passed it over to the merchant. The one important feature which the transaction lacks of being a sale of credit, such as in the sale of a guaranty or indorsement, is that in those instances there is no advance of money made by the guarantor or indorser to or for the party guaranteed or endorsed and he still owes the debt; while in this case there is an advance of money for the defendant by the plaintiff in full discharge of his debt and he does not owe anything to the merchant, but does owe the plaintiff. When he gave plaintiff his note, ostensibly for the coupons, it was, in reality, for the money which plaintiff used in paying for the goods.

We conclude with the trial court that the notes are usurious, which under the statute rendered the mortgage void, and the judgment must therefore be affirmed. All concur.