STATE v. DAVID L. WEINER and WILLIAM WEINER.

(*April* 29, 1942.)

RODNEY and SPEAKMAN, J. J., sitting.

*James R. Morford,* Attorney-General, and *Thomas Herlihy, Jr.,* Deputy Attorney-General, for the State.

*John J. Morris, Jr.,* for the defendants.

*Harry Rubenstein* for Berman Realty Co., also considered in opinion.

Court of General Sessions, No. 59, May Term, 1940.

RODNEY, J., delivering the opinion of the Court:

Some slight preliminary consideration must be given to several general and, to some extent, antagonistic principles of law, and to harmonize them insofar as it may be possible.

While this proceeding is a criminal proceeding brought by the State because of the alleged failure to receive a Certificate of Registration which governs the details of the making of certain loans, and this, to a certain extent, is to be strictly construed, yet a realistic view of the purpose of the Act shows a clear connection with a desire to control supposedly usurious practices, and this would ordinarily require a somewhat liberal construction of the statute.

A legal rate of interest for the use of money has, in Delaware, long been the subject of legislative action, and from early Colonial days statutory penalties have been provided for the taking of a larger sum than allowable by law. These laws in general are favorably regarded, and are liberally construed to accomplish their purpose. When, however, the statute bearing on supposedly usurious practices leaves the field of operation on the contract, but is punitive and criminal in form, and is directed against the person accused of the usurious act, the construction then becomes more strict and in line with the construction of other criminal statutes.

The main question to be determined in this case is whether the use of the "shopping order" is a "loan of money," within the purview of the statute. It is only the engagement in the business of making small loans or loaning money that is attempted to be regulated by the statute requiring registration.

There are several viewpoints by which the arrangement should be tested in order to arrive at the proper construction:

(1)  As to whether the arrangement is a loan of money, as contended by the State.

(2)  As to whether it is a sale or use of the credit of the defendants, as contended for by them, or

(3)  Whether the arrangement may be considered as a sale of the goods by the merchant to defendants, and a subsequent sale to Moore, the alleged borrower. This view is somewhat related to the second view, but has some differences to which attention will be drawn.

We prefer to treat these matters in their inverse order:

(3)  If a defendant, Weiner, had accompanied the purchaser, Moore, to the store, and said "give to Moore an overcoat to the value of $13.50 and charge the same to my account" it is possible that the sale would have been to Weiner, with mere delivery to Moore. It seems certain that Weiner's liability would not be as guarantor but an original obligation. *Ueberroth v. Riegel*, 71 Pa. 280; 1 *Brandt Suretyship & Guaranty* 184. A shopping order, if express in its terms, would accomplish the same result. When Moore went to the defendant and gave his note for $15.00 he received an order for goods (on which no cash could be obtained). This order may have been in the nature of an anticipatory sale; when Moore presented the order to the store and received the goods, such goods were sold and charged to the defendant, and delivered to Moore, in furtherance of such anticipatory sale.

It is at this point, and in confirmation of the theory of sale, that we consider the bailment lease of the goods set out in the Bill of Particulars. There the instrument is set out in full, and whether it be a bailment lease or a conditional sale, the effect is substantially the same. The time of execution of the instrument is not set out and is perhaps not determinative, but being a criminal case with reasonable

assumptions favorable to the defendants, we may assume that it was executed after the borrower had returned from the store with the goods. Upon this assumption the following sequence of events happens. Moore goes to the defendants and gives his note for $15.00, and receives an order on a store for an overcoat or other merchandise to the value of $13.50. Upon presentation of the order he obtains the goods and pays nothing therefor, the goods being charged to and subsequently paid for by the defendants. Moore then returns the goods to the defendants, who execute a bailment lease or conditional sale contract to Moore, retaining the title thereto, and Moore signs the agreement, agreeing to pay for the goods in weekly payments.

To sustain the indictment, this must be construed as a "loan of money" by the defendants to Moore.

(2) The defendants contend that the transaction constitutes a sale or use of the credit of the defendants and not a loan of money, and there is a close similarity between this view and the one already considered. Many authorities have discussed the use of the credit of another, as distinguished from the loan of money, and as affected by the law of usury. The defendants cite *Oil City Motor Co. v. C. I. T. Corporation,* (10 Cir.) 76 F. 2d 589, 104 A. L. R. 240; *Philadelphia Warehouse Co. v. Seeman,* (2 Cir.) 7 F. 2d 999; *Ryttenberg v. Schafer,* (D. C.) 131 F. 313, as sustaining their views. These and other cases collected in a note in 104 A. L. R. 245 do hold that a sale or use of credit may be entirely distinct from a loan of money, and that one may sell his credit as any other commodity, for such price as he may obtain without subjecting the contract to the taint of usury.

In most of the cases we have seen while the person whose credit is sold becomes liable in connection with the contract, yet the purchaser of the credit remains also liable for the debt, and the additional credit of the guaranty is the

sole subject of the particular contract. Such are the cases involving an endorsement of negotiable paper. The credit of the endorser is the sole subject of the contract between the maker and such endorser, but the maker is also liable on the note itself.

■ (1) The State contends that the transaction is a loan of money. While the distinction between a loan of money and a sale or use of credit is well established, yet the exact line dividing the two may become quite indistinct, and so rigid is the law against usury that Courts will view the entire transaction, and if any plan or arrangement is a mere cloak to hide an usurious scheme, then the form is immaterial and the substance is the thing to be considered. This principle is not only true as to cases dealing solely with loans, but also as to questions between loans on the one hand and sales of credit on the other, for usury can only be connected with the loan or forbearance of money.

The State cites with confidence and with much reason the case of *White v. Anderson,* 164 Mo. App. 132, 147 S. W. 1122. That was a civil case of replevin and the Court held, under facts strongly analogous to the present, that the contract was usurious. Since usury concerns only the loan or forbearance concerning money the Court must have thought the shopping orders there involved were substantially loans of money. The present case has some dissimilarity. This is a criminal case and usury is not necessarily involved at all. The statute requires those in the "business" of making small loans to register. It is the business that is registered, and this, we take it, regardless of the return on the money, whether legal or usurious. It is the failure of those engaged in the business of making loans to register that constitutes the offense, and the necessity of registration is solely determined by the fact as to whether the business is that of making loans.

*White v. Anderson, supra,* was a civil case solely involving the question of usury. It relied upon the fact that the lender in addition to the amount received from the borrower also received a discount from the store selling the goods. The Court stated that such was the exact question before it. See also *Osborne v. Fuller,* 92 S. C. 338, 75 S. E. 557, 42 L. R. A. (N. S.) 1058, and note where the annotator questions the correctness of *White v. Anderson.*

In this case we have not specifically considered the fact that after the shopping orders had been accepted by the merchant that the account of the merchant was paid by the defendant upon the basis of ninety cents on the dollar. This would seem only material as to the return obtained by the lender, and not material to the fact as to whether the original transaction was a loan of money, sale or use of credit, or sale of merchandise. If the original transaction was a loan of money the charge of the indictment was sustained and it needed no support from the discount of the merchant to the lender; if the original transaction was not a loan of money it could not be made such by the subsequent dealings between the merchant and lender.

We think the facts of the present case do not constitute a loan of money, whether they constitute a sale of the goods themselves or a sale or use of credit it is unnecessary to precisely determine.

The doubt that has been in our mind is whether the purpose of the entire transaction is a mere cloak to hide an usurious scheme. Believing, however, that the arrangement may be a business transaction other than the loan of money, and the statute being criminal in form, we think the indictment should be quashed. We think the statute should not be unduly enlarged by construction, but that any desirable changes should be left to the law making department of government.

We think that under the facts the shopping orders do not constitute the loan of money, and the motion to quash should be granted.