## TUTTLE and HOLT *against* CLARK.

A sheriff having demanded payment of an execution in his hands against the defendant, which was nearly out, the defendant made his promissory note payable to the order of a third person, and by him indorsed in blank, and delivered it to the sheriff, contracting with him, that if the defendant should not pay the execution in ten days, it might be sold in market, or otherwise disposed of, and the avails applied in payment of the execution. After the expiration of the ten days, the execution remaining unpaid, the sheriff delivered the note, in the state in which he received it, to the plaintiffs, on their advancing to him a sum of money less than the face of the note, by more than the legal interest for the time the note had to run. Held, that the note so received by the sheriff, was in security of the execution; that he had an interest in it, coupled with a power to sell; and that consequently, it was an effective instrument in his hands, and not being usurious in its original concoction, it did not become so, by the subsequent sale to the plaintiffs.

This was an action on a promissory note, made by the defendant, for 150 dollars, dated the 10th of *August*, 1819, payable to the order of *Chester Whittlesey*, at the *Eagle* bank, 90 days after date. The defendant pleaded *non-assumpsit*, with notice of usury.

The cause was tried at *Hartford, September* term, 1821, before *Hosmer*, Ch. J.

*Noah A. Phelps*, Esq. sheriff of *Hartford* county, having in his hands for collection an execution against the defendant, demanded payment thereof; whereupon the defendant, on the 3d of *September*, 1819, delivered to him this note, on the terms specified in the following writing: "Whereas *Noah A. Phelps*, sheriff of *Hartford* county, has an execution to collect against me, in favour of the *Eagle* bank, for 129 dollars, 84 cents, debt, and cost of execution, dated the 6th day of *July*, 1819, and signed *Roger S. Skinner*, clerk of *New-Haven* city court; and whereas I have, this day, left with said *Phelps* my note, dated *August* 10th, 1819, payable at the *Eagle* bank, 90 days after date, to the order of *Chester Whittlesey*, for 150

*Hartford,*
*June,*
*1822.*

*Jencks*
*v*
*Phelps.*

*Hartford,*
*June,*
*1822.*

Tuttle & Holt
*v.*
Clark.

dollars, and indorsed by said *Whittlesey,* and also by *Roger Whittlesey*; now, in case I shall not well and truly pay said *Phelps* the whole amount of said execution, and his fees thereon, within ten days from this date, I hereby agree, that said *Phelps* may sell said note in market, or otherwise dispose of it, and apply the avails thereof in payment of said execution, and the fees thereon, and the balance of the avails of said note, if any, to retain in his hands until called for. *Hartford* city, *September* 3d, 1819. *Alphin Clark.*" After the expiration of the ten days mentioned in this writing, *Phelps* delivered the note to the plaintiffs, indorsed as above stated, without indorsing it himself, and received of them therefor the sum of 139 dollars only; the plaintiffs having retained 11 dollars, for the advancement of the money. In answer to the plaintiff's enquiry, he informed them, at the time of the delivery, that he could not say, that the maker of the note was a responsible man, but the indorsers were responsible. It did not appear, that the plaintiffs had any knowledge of the terms on which the note had been put into *Phelps's* hands. *Phelps* applied so much of the money received of the plaintiffs on the execution as was sufficient to pay it, with his fees, being about 137 dollars; and the balance he paid to the defendant. The questions between the parties were, whether the note was sold to the plaintiffs *bona fide*, or the money was loaned on a usurious reservation; whether the note was made merely to be disposed of by *Phelps*, without his being interested in it; and whether the ignorance of the plaintiffs concerning the terms on which the note was received by *Phelps*, made any difference in the case. The Judge instructed the jury, That as the defence made was usury, to sustain it, there must appear to have been a corrupt agreement for the loan of money, and the reservation of more than six *per cent per ann.* for the forbearance; and in this enquiry, the cover, if there was any, must be stripped off, and the transaction viewed in its genuine colours: That the question was, whether the plaintiffs bought the note *bona fide*, which legally they might do, or loaned their money, taking for the use of it a sum beyond what the law permitted: That on the legal construction of the writing recited, the note was not received by *Phelps*, in payment of the execution, it being put into his hands to sell or dispose of, as the agent of the defendant, if the execution were not paid in ten days: That the note first became an effective instrument on the delivery of it to

the plaintiffs: And that the ignorance of the plaintiffs concerning the contract between *Phelps* and the defendant, made no difference in the case; but if the money was loaned for usury, it was at the peril of the plaintiffs, and they were liable to the consequences. Under this direction, the jury returned a verdict for the defendant; and the plaintiffs moved for a new trial, for a misdirection.

Hartford,
June,
1822.

Tuttle & Holt
v.
Clark.

*N. Smith* and *Johnson*, in support of the motion, contended, 1. That a note may be sold at a discount exceeding the legal interest, without usury. 1 *Swift's Dig.* 313. *Lloyd* v. *Keach*, 2 *Conn. Rep.* 175. *Musgrove*, q. t. v. *Gibbs*, 1 *Dall.* 217. *Wycoff* v. *Longhead*, 2 *Dall.* 92. *Churchill* v. *Suter*, 4 *Mass. Rep.* 156. 162.

2. That on the legal construction of the writing, given by the defendant, to *Phelps*, the note was received by him *as security* for the execution, with a conditional power to sell. The note, therefore, first became effective when delivered to *Phelps*. He had *an interest* in it. The defendant could not take back the note, before it was sold; nor could he revoke *Phelps's* authority to sell it, as he clearly might have done, had not that authority been coupled with an interest. Suppose bank stock had been pledged to *Phelps*, for the same purpose; would he, in that case, have been a mere agent to sell? Would the power to sell deprive him of his interest in the pledge?

3. That if this note was not an effective instrument until it came into the hands of the plaintiffs, their ignorance of that fact exempted them from the imputation of usury, and was proper to be considered by the jury. It was material to shew, that the plaintiffs meant to purchase a note, and not to loan money. They could not commit usury against their will.

*T. S. Williams*, contra, admitting, as the judge in his charge had admitted, that the *bona fide* purchase of a note at a greater discount than the legal interest, is not usury, contended, 1. That the note in question did not become effective until the plaintiffs took it. Neither of the indorsers ever owned it, or had any interest in it. For what purpose was it left with *Phelps?* Merely to raise money to pay the execution in his hands. He had a power to make it effective; and this is all the interest he had in it. Suppose the defendant had left with *Phelps* a blank note, having on it a blank indorsement, with

power to fill it up, and negotiate it; would he not, in that case, have had the same interest as in this? And yet no one would claim, that such a note would be effective in that condition. If this was *Phelps's* note, what need was there of a power from the defendant to sell it? He was, evidently, the mere agent of the defendant, to raise money, by means of this note, to satisfy the execution in his hands. If this point is established, it makes an end of the case: the plaintiffs cannot recover. *Munn* v. *The Commission Company,* 15 *Johns. Rep.* 44. 55.

2. That ignorance of the plaintiffs in relation to the previous history of the note, was properly excluded from the consideration of the jury. *Jones* v. *Hake,* cited 3 *Johns. Ca.* 68. reported 2 *Johns. Ca.* 60. Whether the transaction between *Phelps* and the plaintiffs amounted to a sale of the note, depended upon the *facts,* and not upon the plaintiffs' knowledge or ignorance of them.

HOSMER, Ch. J. Whether the charge to the jury, that the note declared on first became an effective instrument on the delivery of it to the plaintiffs, is the only point on which I shall express an opinion. The resolution of this question entirely depends on the construction of the receipt, given by sheriff *Phelps,* on the reception of the note. From this it appears, that he had in possession an execution for 129 dollars, 84 cents, against the defendant, in favour of the *Eagle* bank, to secure the payment of which, *Clark* made his note for 150 dollars, payable at the *Eagle* bank, in 90 days, to the order of *Chester Whittelsey,* and procured the said *Whittelsey* and *Roger Whittelsey* to indorse it. In this condition, the defendant delivered the note to the sheriff, at the same time contracting, if he should not pay the whole amount of the above execution, and the fees thereon, in ten days, that it might be sold in market, or otherwise be disposed of, and the avails be applied in payment of the execution: If a balance should remain, it was to be retained in the hands of the sheriff, until the defendant should call for it.

Without adhering too tenaciously to the words of the contract, it is very obvious, that the note was made and delivered in security of the execution; and to attain this object, the construction should be favourable; and if necessary, most strongly against the defendant. Any exposition of the agreement, which would have a manifest tendency to defeat the in-

tended security, cannot be in accordance with the intention of the parties. The opinion expressed in the charge to the jury, was of this description : If the note was not an effective instrument, in the hands of the sheriff, anterior to the sale of it, during this period, it was no security to him ; and the death of the maker, the impossibility of selling the note, or other similar causes, would frustrate the principal object of the negociation. On the other hand, there exists no good reason to deny, in behalf of the sheriff, who unquestionably had an interest in the note, the usual construction, resulting from the delivery of the instrument to him ; more especially, when this, in no respects, is opposed to the defendant's interest, but is necessary to effectuate the security intended. For much stress has been put on on the express authority given to sell the note in the market ; as if this were incompatible with the idea, that it was intended to be effective in the sheriff's hands. Although the note existed, when in his possession, in full force ; yet, out of abundant caution, it was a point of prudence, to take an agreement from the defendant, which should preclude all future controversy relative to the loss, which might arise, from a forced sale of the instrument.

On the whole, I am of opinion, that the note was an effective instrument in the hands of the sheriff, with the superadded power of disposal, should it be necessary, even at a loss, on the responsibility of the maker. In this view of the subject, the note was not usurious in its original concoction, or made with an usurious intent ; but it was perfect and available in the sheriff's hands, and he could have maintained an action upon it against the maker. *Munn* v. *Commission Company*, 15 *Johns. Rep.* 44. 55. By necessary legal consequence, this note, free from the taint of usury, in its origin, he had a right to sell at a discount.

The other Judges were of the same opinion.

New trial to be granted.