## CHARLES F. DURANT *vs.* JACOB J. BANTA and DAVID NORTHUM.

1. Where a note is fairly executed, and without usury between the parties, the payee may sell it at any rate of discount he chooses, and the purchaser will have a right to recover the full amount of the note of any party, either maker or endorser, legally liable upon it.

2. Promissory notes are personal chattels, and like any other property, may be sold for what they will bring; but if a note is transferred by general endorsement, as security for a loan obtained at a usurious rate of interest, the endorsee cannot enforce payment of the note.

3. Where usury is charged, the corrupt agreement to commit the offence must appear either by the facts of the case, or as a conclusion of law, from the facts.

4. If the payee of a note transfer it by general endorsement, the transaction does not necessarily, and as a conclusion of law, import a contract for a loan: whether it was a sale of the note, or a loan of money upon it, depends upon the meaning and intention of the parties at the time; it is to be determined by the evidence, and is a question of fact for the jury.

5. If A obtain money of B at a usurious rate of interest, and make himself primarily and unconditionally liable for the payment of it, the trans-

action is patent upon its face, and is conclusively a borrowing and lending; but if A only make himself secondarily and conditionally liable by his endorsement or guaranty, the transaction is different, and may be explained by parol evidence.

6. Where the transfer of a note, at a rate of interest that would be usurious here, is negotiated in New York, between parties who are residents of New Jersey, the fact that the parties are residents of this state is not conclusive evidence that the business was transacted in New York to evade the usury laws of New Jersey; but whether it was so or not, is a question to be determined by the evidence in the case, and to be decided by the jury.

In error to the Hudson circuit.

Durant brought an action in the Hudson circuit, against Banta and Northum, to recover the amount of a promissory note, of which the following is a copy:

"$375.60.                    Jersey City, Feb. 23, 1856.

Ninety days after date, I promise to pay to the order of D. Northum, three hundred and seventy-five .60 dollars, at Hudson County Bank, value received, without defalcation or discount.

J. J. BANTA."

*Endorsed*—D. Northum, Jersey City.

The note had been protested for non-payment, and the action was brought against the drawer and endorser under the provisions of the act to simplify pleadings, &c. *Nix. Dig.* 637, *pl.* 134.

The only witness examined in relation to the transfer of the note to the plaintiff was John C. Morgan, who testified as follows: "I have seen this promissory note before; when I first saw it, it was in the hands of Mr. Northum; it was not endorsed by him; Northum handed the note to me, to see if I could *sell* it; I am a note broker; I brought it back to him for his endorsement; and Northum went into a room on Wall street to endorse it, and brought it back endorsed." Being *cross-examined,* he said, "I *sold* the note to Mr. Charles F. Durant, at two or three per cent. a month; it was drawn at ninety days; so much percentage was deducted; the consideration, they said, was a valid consideration." And being *re-examined*

*in chief,* he said, " Before the note was done, I saw Mr. Banta, to see if it was a valid business note ; Mr. Banta said it was given for a valuable consideration, and would be paid when if became due ; Mr. Northum represented that it was *bona fide*—that it was a business note ; this negotiation and transaction occurred in New York city ; Mr. Banta and Mr. Durant reside in Jersey City ; Mr. Northum resides here now ; but I cannot say where he resided at the time, but I think in New Jersey." The parties having rested, the court charged the jury as follows :

"A sale of a note is one thing, and a loan of money on it is another. If a note is *sold* at a rate of discount greater than six per cent. per annum, it is not usury ; but if money is *loaned* and advanced upon it at a greater rate than six per cent. per annum it is usury, and the endorsee of the payee cannot maintain an action either against the person from whom he purchased or any prior endorser or maker.

In the case of Freeman *ads.* Brittin, in our own Supreme Court, it was held that if a note, valid between the maker and the payee, be sold by the payee at a greater rate of discount than six per cent. per annum, *and the payee transfers it by a general endorsement, and the endorsee looks to his immediate endorser for ultimate indemnity, provided the maker fails to pay, it is not a sale, but the loan of money on the same, and therefore usurious.*

If the parties to this transaction were ignorant of the real nature of the endorsement, and intended to convey this note by a special restricted endorsement, instead of a general one, this fact could be proved. But the conclusive proof that the plaintiff did not intend to take such special endorsement, and look alone to the maker for the payment of the same, is, he has had the note protested, and comes into court and asks to have the service of the notice of the protest admitted ; and not only brings his suit against the maker, but the payee, from whom he derives title. *This is conclusive evidence that it is not a*

*sale of the note, but the loaning or advancing of money on the same,* which makes it usurious and void.

It was no answer, in this action, that the plaintiff is entitled to recover because the transaction occurred in New York. The parties reside in New Jersey, and they could not pass over into New York and enter into a negotiation to avoid our statute of usury. And, *as there is no disputed question of fact involved in this case for you to pass upon, you must find a verdict for the defendants."*

To this charge the plaintiff's counsel took several exceptions; and the jury having rendered a verdict for the defendants, in accordance with the charge, the case is brought before this court for review.

*Weart,* for plaintiff in error.

1. A sale of a note or bond for any sum that may be obtained for it, is not usurious.

2. If A makes a *bona fide* business note, payable to the order of B, and B endorses it by a general endorsement to C, at a greater rate of discount than lawful interest, this is not a loan of money on the same, but a sale of the note, and C is entitled to recover of A the face of the note, and of B the amount actually advanced him. Dayton and Ford, Justices, in *Freeman* ads. *Brittin,* 2 *Harr.* 222 –237; 2 *Parsons on Con.* 424; *Parsons on Merc. Law* 265; *Edwards on Bills and Prom. Notes* 353 and 365; *Cram* v. *Hendricks,* 7 *Wend.* 569; *Nichols* v. *Fearson,* 7 *Peters* 107; *Rapelye* v. *Anderson,* 4 *Hill* 472; *Inglas* v. *Lee,* 9 *Barb.* 647; *Belden* v. *Lamb,* 17 *Conn.* 452; *French* v. *Grindle,* 15 *Maine* 163; *Oldham* v. *Turner,* 3 *B. Monroe* 68; *May* v. *Campbell,* 7 *Humph.* 450; *Brock* v. *Thompson,* 1 *Bailey* 322; 3 *U. S. Dig.* 618, § 107; *Massa* v. *Dauling,* 2 *Strange* 1243; *Parr* v. *Eliason,* 3 *Esp. R.* 210; *Wiffen* v. *Roberts,* 1 *Esp. R.* 261; *Tuttle and Holt* v. *Clark,* 4 *Conn.* 156; *Gaul* v. *Willis,* 26 *Penn. R.* (2 *Casey*) 260; *Harrick* v. *Jones,* 4 *Mc-Cord's R.* 402; *Saltmarsh* v. *Planters' and Mechanics' Bank,* 17 *Ala.* 768; 13 *U. S. Dig.* 636, § 14.

The transaction is not a loan of money, but the purchaser of the note buys a right to sue the maker of the note, and also an engagement, on the part of the seller, that the maker shall pay the face of the note. 2 *Parsons on Con.* 426; *Cram* v. *Hendricks*, 7 *Wend.* 569.

The statute contemplates a loan of money, and, it being a penal statute, must be construed strictly.

If the case must turn upon the ground of protection of the needy borrower, you would have to make usurious all sales of bonds and notes, even without a guaranty.

A man may sell his credit for whatever he may obtain for it, and the transaction is not usurious. 2 *Parsons on Con.* 426; *Edwards on Bills and Prom. Notes* 365; *Dry Dock Bank* v. *American Life Ins. and Trust Co.*, 3 *Comst.* 344; *Deforest* v. *Strong*, 8 *Conn.* 519; *Ketchem* v. *Barbour*, 4 *Hill* 244; *More* v. *Howland*, 4 *Denio* 268.

If a man may sell his credit, I can see no reason why the endorser is not legally liable to pay the full face of the note upon the default of the maker; but I choose to put the case within the rule laid down in numerous well-adjudged cases.

The paper is made and in the market for sale before the purchaser has any knowledge of it; therefore it is not a contrivance between the parties to evade the statute.

It is not a loan of money, because it is not founded upon the idea that the endorser will have to pay the note, but upon the idea that the maker is solvent, and will pay at maturity— this is the *prima facie* case.

A loan, in strict parlance, is where the person or his property is primarily and only liable for the repayment of the money, where it is his debt.

3. Generally speaking, the validity of a contract is to be decided by the law of the place where it is made. If valid there, it is, by the general law of nations, held valid everywhere, by the tacit or implied consent of the parties. *Story on Prom. Notes*, § 155; *Story on Conflict of Laws*, § 242 A, and cases there cited; 2 *Kent's Com.* 453, 4th cd.

Durant v. Banta.

It may be laid down, as a general rule, that the makers and endorsers of negotiable paper are governed by the laws of the country in which the paper was made or endorsed. 2 *Kent's Com.* (*4th ed.*) 460, *note C; Story on Confl. of Laws*, §§ 267, 343, 314, 367.

The court should have submitted the fact to the jury, as to whether the note was a business or accommodation note.

It was also a question of fact, to be decided by the jury, whether the parties went into the State of New York to evade our statute, or whether the transaction fairly and honestly occurred there without any regard to the New Jersey rule; and this fact should have been submitted.

If the transaction fairly occurred in New York, then a valid title to this note passed. The plaintiff in error does not claim through a usurious endorsement, and he is entitled to recover upon the note, according to the New York rule.

*Nevius*, for defendants, relied upon the case of *Freeman* ads. *Brittin*, 2 *Harr.* 191, as having settled the law in this state upon the questions involved in this case. That case had stood for nearly twenty years without being reversed or overruled, and the doctrine, as there settled, rested upon solid ground. In this case, the parties were residents of Jersey City, and the contract was made by them in New York, to avoid the usury laws of New Jersey.

The opinion of the court was delivered by

POTTS, J. In the first place, the plaintiff's counsel excepts to the charge of the court, that if the payee of a *bona fide* business note disposes of it at a greater rate of discount than six per cent. per annum, and endorses it generally, it is a *loan* of money, and *usurious;* and that if the endorsee or payee is held for the ultimate payment of the money, by protest and suit, it is evidence conclusive

Durant v. Banta.

that the transaction was *not a sale,* but *a loan of money* on the note.

Our act against usury (*Nix. Dig.* 372) declares that every contract for the *loan* of any money, &c., at a greater rate than six per cent. shall be utterly void. So that the right of recovery in this case turned upon the question, whether this transaction was a loan or not, for, in the transfer of the note, Durant received at the rate of twenty-four or thirty-six per cent. per annum discount. The charge of the court was in accordance with the ruling in the case of *Freeman* ads. *Brittin,* 2 *Harr.* 191. It was held in that case, substantially, that the transfer of a note *without recourse* would generally be considered a *sale;* the transfer *with recourse,* that is, by general endorsement, a *loan* on the security of the note. The rule is stated subject to exceptions not necessary now to notice.

The first branch of this rule rests on abundant authority, and is not open to controversy at the present day. Where a note has been fairly executed, and there is no usury between the original parties, so that the payee has acquired a legal right to sue the maker upon the note, he may sell it without recourse at any rate of discount upon its face, and the purchaser will have a right to enforce it for its full amount against the maker. 2 *Parsons on Con.* 421, *note k;* 7 *Peters* 107, *Nichols* v. *Fearson;* 13 *Peters* 345, *Moncure* v. *Dermott;* 8 *Cowen* 685, *Powell* v. *Waters,* *per* Jones, Ch.; 3 *Wend.* 65, *Rice* v. *Mather;* 7 *Wend.* 569, *Cram* v. *Hendricks;* 15 *Johns.* 55, *Munn* v. *Commission Co.;* 4 *Hill* 472, *Rapelye* v. *Anderson;* 10 *Paige* 326, *Holmes* v. *Williams;* 2 *Sandford's Ch.* 149, *Holford* v. *Blatchford;* 9 *Barb.* 647, *Ingalls* v. *Lee;* 4 *Mass.* 162, *Churchill.* v. *Suter,* *per* Parsons, Ch. J.; 2 *Conn.* 179, *Lloyd* v. *Keach;* 4 *Conn.* 153, *Tuttle* v. *Clark;* 3 *McCord* 365, *King* v. *Johnson;* 1 *Dall.* 217, *Musgrove* v. *Gibbs;* 2 *Dall.* 92, *Wycoff* v. *Longhead;* 26 *Penn. R.* 259, *Gaul* v. *Willis;* 15 *Maine* 163, *French* v. *Grindle;* 16 *Maine* 456, *Farmer* v. *Sewall;* 20 *Maine* 98, *Lane* v. *Steward;* 2 *Munford* 36, *Hansbrough*

v. *Baylor;* 1 *J. J. Marshall* 497, *Shackelford* v. *Morris;* 3 *B. Monroe* 67, *Oldham* v. *Turner;* 6 *B. Monroe* 529, *Metcalf* v. *Pilcher;* 7 *Humphreys* 451, *May* v. *Campbell;* 17 *Ala.* 768, *Saltmarsh* v. *P. and M. Bank.*

But upon the second branch of the rule, the doctrine that where the transfer is by endorsement with recourse, the transaction is to be considered a *loan,* and therefore usurious if more than legal interest was taken, is undoubtedly in conflict with the weight of authority. Justices Ford and Dayton dissented from it in Freeman *ads.* Brittin; and although the rule has since that case been generally adopted at the circuits, the force of the objections to it have never ceased to be felt.

The case now before the court furnishes a fair example of the way the rule operates practically. Here Banta honestly owes Northum $375, and gives him his promissory note at ninety days. Before the note becomes due, Northum finds that he needs money in the way of his business, and he therefore puts this note in the New York market for sale, and, as it is drawn to his order, endorses it. It is sold for a price satisfactory to him, and he receives the proceeds. Nobody is aggrieved; the transaction is voluntary all around; Mr. Northum is accommodated; and, as far as appears, the note has brought its full value in the market at the time. But when the note falls due, and the purchaser, Mr. Durant, asks for his money, he is told he cannot have it; that he has made a usurious *loan* to Mr. Northum and that, by the law of New Jersey, he can recover nothing of either Banta or Northum. But Mr. Durant says, I made no loan; Mr. Morgan, the note broker, brought me a note drawn and endorsed by these parties; offered it for sale, and I bought it. Morgan so testifies. It was considered all around as a sale at the time. The answer is, *Northum endorsed it, and that is conclusive evidence that it was a loan of money, and not a sale of the note.* The result of Mr. Morgan's negotiation, under the rule in Freeman *ads.* Brittin, is, that Durant loses his money,

Northum is released from his liability as endorser, and Banta, who was an entire stranger to the transaction, gets clear of paying an honest note.

It is true the object of the act against usury is not to afford a *remedy* for the mischief, but to *prevent* it. Yet, as it is in its nature highly penal, it should be strictly construed. The mischief at which it is aimed is the loaning of money at usurious rates. To lend money on the security of a note is one thing; to sell a note is another thing. One is within the statute, if the loan is made at a usurious rate; the other transaction the statute does not reach. Bonds, bills of exchange, and promissory notes are personal chattels, and may be sold, like any other chattels, for what they will bring. Millions of property of this description change hands every year, selling for more or less, according to their credit and the supply of money in the market; and a penal statute ought not to be extended by construction to cases not clearly within its scope and meaning. If A part with his own note to B at a usurious rate of interest or discount, or obtain money of B at a usurious rate upon a deposit of collaterals, or in any way make himself *primarily* and *unconditionally* liable for the re-payment of a sum of money at a usurious rate, there the nature of the transaction is patent upon its face— it is borrowing and lending, no matter what the parties may say they intended at the time. But if A have bonds, or bills, or notes, and disposes of them absolutely, giving them the additional value of his own credit by endorsement or guaranty—in other words, makes himself *secondarily* and *conditionally* liable to pay, if the obligor or other parties to the paper do not at maturity, there, I think, the transaction does not necessarily, and *as a conclusion of law*, import upon its face a contract for a loan. It may be a loan or a sale, according to the real *meaning* and *intention* of the parties at the time; and this is to be determined by the evidence, and is a question of fact for the jury.

Durant v. Banta.

Twenty-five years ago this question came before the Supreme Court of the United States, in the case of *Nichols* v. *Fearson et al.*, 7 *Peters* 103. It was a case stronger than the present. S. and J. Fearson had a business note, drawn to their order, which they sold to Nichols for less than its face, having first endorsed it generally. Nichols sued the Fearsons upon their endorsement. They set up the defence of usury. The Supreme Court, without a dissenting opinion, held the transaction a sale, and not a loan of money, and Nichols recovered. The court said, " the endorsement of this note did not necessarily import a loan," and that the great weight of authority was in favor of the validity of this contract. But they added that they were " not to be understood as intimating that, if in a treaty for, or conclusion of *a loan*, the endorsement be expressly stipulated for as security for re-payment, the contract being usurious, may not invalidate the endorsement under the character of a security or assurance."

In the *Bank of U. S.* v. *Waggener et al.*, 9 *Peters* 378, the same court said, that " in construing the usury laws, the uniform construction in England has been, and it is equally applicable here, that to constitute usury within the prohibitions of the law, there must be an *intention* knowingly to contract for, and to take usurious interest; for if neither party intend it, and act *bona fide* and innocently, the law will not infer a corrupt agreement." And so it was held in 4 *Peters* 224, *Lloyd* v. *Scott*.

In New York, it is now settled that the transfer by the payee of a valid available note, upon which, when due, he might have maintained an action against the maker, and which he parts with at a discount beyond the legal rate of interest, is not a usurious transaction, although the payee, on such transfer, endorses the note; and on non-payment by the maker the endorsee may maintain an action against the endorser. This doctrine may be found fully discussed, and numerous cases cited in *Cram* v. *Hendricks*, 7 *Wend.* 569; and see *Rapelye* v. *Anderson*, 4

*Hill* 472; *Ingalls* v. *Lee*, 9 *Barb*. 647 and *Cobb* v. *Titus*, 13 *Barb*. 45, and the earlier New York cases; *Braman* v. *Hess*, 13 *Johns*. 52; *Munn* v. *The Commission Co.*, 15 *Johns*. 44; *Powel* v. *Waters*, 17 *Johns*. 176; *Bank of Chenango* v. *Hyde*, 4 *Cowen* 567; *Coster* v. *Dilworth*, 8 *Cowen* 299; *Rice* v. *Mather*, 3 *Wend*. 62; *Beach* v. *Fulton Bank*, 3 *Wend*. 573; *Kent* v. *Walton*, 7 *Wend*. 256. And in Maine, the cases of *French* v. *Grindle*, 15 *Maine R.* 163; *Farmer* v. *Sewall*, 16 *Maine R.* 456; and *Lane* v. *Steward*, 20 *Maine* 98. In S. Carolina, *Brock* v. *Thompson*, 1 *Bailey* 322. In Kentucky, *Metcalf* v. *Pilcher*, 6 *B. Monroe* 530. In Tennessee, *May* v. *Campbell*, 7 *Humphreys* 450, and 2 *Parsons on Contracts* 423; also *Lloyd* v. *Keach*, 2 *Comstock's R.* 175; *Tuttle* v. *Clark*, 4 *Conn*. 153.

Chancellor Walworth, in the case of *Cram v. Hendricks*, and Mr. Justice Cowen, in the case of *Rapelye v. Anderson*, controverted this doctrine with great ability in New York, but they were overruled in both cases. And there are some few cases in other states, in which the rules adopted in *Freeman ads. Brittin*, by a majority of the judges, has been maintained. Among these are the cases in North Carolina of *Ballinger* v. *Edwards*, 4 *Iredell's Eq. R.* 449, and *McElwee* v. *Collins*, 4 *Dev. & Bat. R.* 209. The reasoning in all these cases hinges upon the idea that a transfer by a *general endorsement* of a promissory note, being a contract to guaranty its ultimate payment, on certain conditions, it amounts to a contract for a *loan* of money. And it is said, "if I sell you for $900 a debt of $1000 and agree at the time to repay you the $1000 if the debtor does not, *it is the same* as if you lend me $900 on my agreement to pay you $1000." But is it the same? Suppose the debt of $1000 is in the shape of a promissory note, drawn by a man of undoubted ability, payable to my order in one year. I require $900 to answer the exigencies of my business, and owing to the scarcity of money, every kind of property is at a discount of ten per cent. in the market. In preference to borrowing the money, or

selling stock or real estate, I take this note into the market and sell it absolutely at ten per cent. discount, with my general endorsement, the very object and intention of the sale being to avoid the necessity of borrowing at a usurious rate. Is that, after all, *the same* as if I borrow $900 of my neighbor, and agree to pay him $1000 in a year? Is there no difference between an agreement to pay my own debt, and an agreement to become security for the payment of the debt of *another?* between a contract absolute and a contract conditional? between a case where the obligation is perfect, and where it may or may not take effect, and is dependent entirely on future contingencies? I think it is this very difference that distinguishes the two cases, and makes the one case a borrowing of money, and the other the sale of a chattel. If the contract of *recourse* stamps the transaction as a loan, it is so whether more or less is realized; and there can be no such thing as the *sale* of a note with the vendor's general endorsement, or of a bond with a guaranty, a doctrine which is certainly in conflict with the usages and understanding of the business community.

A *bona fide* business note, which a man has taken in exchange for merchandise or money, is as much his property as was that which he gave in exchange for it. His dominion over it is perfect. He may barter, exchange or give it away as he pleases. He has certainly the same legal right to sell it that he has to sell anything else that is his; and there is not a word in the act against usury which indicates a design to limit or interfere with that right; nor do I believe that a rule which so interferes in effect would be any protection or relief to the needy. But, the argument is, he must not *guaranty* it. Practically that is simply depriving him of the benefit of his credit and character in the disposition of that description of property—saying to him, true, the note is yours, and you may sell it, like any other chattel, for what it will bring, but you shall not guaranty its ultimate payment if you sell it

Durant v. Banta.

below par. You may sell it for fifty per cent. discount without recourse, but you shall not sell it at seven per cent. per annum discount if you give it the additional value of your endorsement.

The penalty of forfeiture follows the lending of money at usurious interest; but the intention—the corrupt agreement to commit the offence—must appear either from the facts of the case, or, as a conclusion of law, from the facts. And where it is clear, from the facts, that there was no such intention, no such agreement, but that the transaction was absolutely and in good faith a sale, it is going too far to ignore the facts, and draw a legal conclusion contrary to the facts, for the purpose of bringing the case within the operation of the statutory penalty. The argument, that parties may artfully cover up a usurious transaction in this way, has lost much of its force in this state since the recent laws respecting evidence. I am of opinion that this exception is well taken.

The case should have been submitted to the jury with instructions that the mere naked fact that the note was transferred to Durant with Northum's general endorsement, did not, as a conclusion of law, import that the transaction was a borrowing and lending, within the meaning of the act against usury; but that if they believed from the testimony that the transaction was fairly and honestly a sale—so intended and understood by both parties at the time—and with no design under cover of form to evade the operation of the statute, that the verdict should be for the plaintiff, otherwise not.

As to the doctrine held in New York, that the endorsee of a promissory note, who buys it at less than its face, can only recover from the endorser the amount he paid him, with interest, in case the maker does not pay it, seems to be without any foundation in law. If the transaction is a sale in fact, it passes a perfect title, and the holder has a right to look to all parties legally liable for the face of the paper under the provisions of the act concerning promissory notes, &c. *Nix. Dig., pl.* 667, § 4.

In the second place, the plaintiff excepts to that part of the charge which instructed the jury that it was no answer to this action that the transaction occurred in New York; that the parties resided in New Jersey, and they could not pass over into New York and enter into a negotiation to avoid our statute of usury. The objection to this instruction is, that it assumed a fact which ought to have been submitted to the jury. Whether this was *bona fide* a New York transaction, or whether the parties negotiated the transfer of the note in New York merely to avoid the usury laws of this state, was a question to be determined by evidence, and to be considered by those to whom the law has committed the decision of questions of fact. It did not follow, as a conclusion of law, that because the parties lived in New Jersey, they went to New York for an illegal purpose; nor, in truth, did the evidence warrant, as far as I can see, any such inference. It does not even appear, from the evidence, that Durant knew that Northum was the owner of the note. The note was in the possession of Morgan, and Durant bought it of him, without any disclosure by Morgan to him that he was selling for Northum. This exception is therefore also well taken.

*For affirmance*—Judges VALENTINE and WOOD.

*For reversal*—The CHANCELLOR, the CHIEF JUSTICE, and Judges ELMER, POTTS, HAINES, RYERSON, VREDENBURGH, CORNELISON, RISLEY, and SWAIN.

CITED *in Holcomb* v. *Wyckoff*, 6 *Vr.* 36, 39.