WILLIAM S. NICHOLS, PLAINTIFF IN ERROR v. SAMUEL J. FEARSON ET AL.

A promissory note, payable at a future day, given for a bona fide business transaction, and which note was not made for the purpose of raising money in the market, was sold by the drawee and indorser for a sum so much less on its face, as exhibited a discount beyond the legal rate of interest, no stipulation having been made against the liability of the indorser; is not per se an usurious contract between the indorser and indorsee, and an action can be maintained upon the note against the indorser who sold the same, by the purchaser.

The courts of New York have adjudicated, that whenever the note or bill in its inception was a real transaction, so that the payee or promissee might at maturity maintain a suit upon it, a transfer by indorsement, though beyond the legal rate of interest, shall be regarded as a sale of the note or bill, and a valid and legal transaction. But not so where the paper, in its origin, was only a nominal negotiation.

There are two cardinal rules in the doctrine of usury which we think must be regarded as the common place to which all reasoning and adjudication upon the subject should be referred : the first is, that to constitute usury, there must be a loan in contemplation by the parties ; and the second, that a contract which in its inception is unaffected by usury, can never be invalidated by any subsequent usurious transaction.

IN error to the circuit court of the United States for the district of Columbia, in the county of Washington.

The plaintiff in error instituted a suit on a promissory note dated at Georgetown, October 22d, 1821, for the sum of one hundred and one dollars, payable to the order of S. and J. Fearson, the defendants, and by them indorsed. The evidence in the case showed, that on the 26th of October 1821 the defendants came into the store of the plaintiff with the note, and told the plaintiff they had obtained the note from the drawer for goods they had sold him at their store, and asked the plaintiff what he would give for it: the plaintiff said he would give ninety-seven dollars for it, which the defendants agreed to take; and thereupon the plaintiff received the note, which was indorsed by the defendants before it was brought to the store, and ninety-seven dollars were paid to the defendants for it.

When the note became due, and being unpaid by the drawer, the defendants promised to pay it.

Upon this evidence the counsel for the defendants prayed the court to instruct the jury:

" That if they believe from the said evidence that the plaintiff received the note upon which this suit is brought of defendants, with their indorsement upon it, and without an understanding that the defendants were not to be responsible on said indorsement, and that the plaintiff paid or agreed to pay therefor only the sum of ninety-seven dollars, the transaction is usurious, and the plaintiff is not entitled to recover; which the court gave as prayed. To which the plaintiff, by his counsel, excepted, and then prayed the court to instruct the jury:

" If they should believe, from the evidence aforesaid, that the defendants, having the note in question, and wishing to part with it in order to avoid suing the drawer, and not having occasion or desire for a loan of money, offered to sell it to the plaintiff, and that the plaintiff having some accounts with the drawer, against which he expected to be able to set off the said note, and not with any other design, agreed to buy it, and did buy it, for ninety-seven dollars; and that no loan for usurious interest, nor any loan, nor any evasion of the laws against usury was in the contemplation of either of the said parties, then plaintiff is entitled to recover;" which the court refused.

The plaintiff's counsel prayed the court to instruct the jury:

" If they believe, from the evidence aforesaid, that this note was sold, and not received by plaintiff, by way of discount or loan, plaintiff is entitled to recover;" which also was refused.

The plaintiff excepted to the instructions of the court given to the jury on the prayers of the defendants; and also to the refusal of the court to give the instruction asked by them.

The jury having found for the defendants, this writ of error was prosecuted to reverse the judgment of the court on the same.

The case was argued by Mr Key for the plaintiff in error; and by Mr Coxe for the defendants.

Mr Key, for the plaintiff in error, contended, that the ques

[Nichols v. Fearson et al.]

tion of usury was one depending entirely on the transaction out of which it was said to arise. If a loan was the object of the dealing between the parties, it might be usury; but if it was only the sale of a note already made, it was not so.

Why should not a person who has claims upon him purchase a note to set it off against such demands? Why should not the holder of a note sell it for what he may consider it worth? The reason that such a sale of a note is said to be usurious is, that the indorser who disposes of it is liable; and yet the sale of a bill of exchange, the payment of which is guarantied by the seller, is valid. Cited, Scott v. Lloyd, 4 Peters, 205; 1 Starkie, 385; 2 Barn. & Ald. 588; 2 Mumford, 36; 8 Cowen, 369; 3 Bos. & Pul. 154; 1 Call, 66, 70; 1 Dall. 217; 2 Strange, 1243.

Mr Coxe, for the defendants in error, argued, that the sale of the note by the defendants, they being indorsers upon it, was a borrowing of money on usury. While it is admitted that promissory notes may be sold for less sums than their nominal amount, and with larger deductions than the regular discount; yet in no such cases does the seller continue liable for the repayment of the money by indorsing the note. The indorsement of the note made it a direct contract between the plaintiff and the defendant for the loan of money, on a usurious consideration. There was nothing therefore to leave to the jury; the fact was admitted, and the law was properly applied to it by the court. Cited, 13 Johns. 52; 15 Johns. 44; 2 Johns. Cases, 60; 15 Mass. 96; 2 Connecticut Reports, 175.

Mr Justice JOHNSON delivered the opinion of the Court.

This was an action by the indorsee against the indorser of a promissory note, in which the plaintiff here was plaintiff in the court below. It comes up upon exceptions taken to certain instructions given at the instance of the defendant, and to the refusal of other instructions prayed for by the plaintiff.

On the motion of the defendants, the court instructed the jury, "that if they believed, from the evidence, that the plaintiff received the note in question from the defendants, with their indorsement upon it, and without any understanding that the defendants were not to be responsible upon their indorse-

ment " at a discount beyond the legal rate of interest, then the transaction was usurious, and he could not recover.

The plaintiff then moved the court to instruct the jury to this effect: "that if they believed the evidence made out a case in which there was no loan contemplated, nor any evasion of the laws against usury, but simply a sale of the note in question, then the transaction was not usurious, and the plaintiff was entitled to recover;" which instruction the court refused.

The case makes out the note to have been a bona fide business transaction, not suspected of usury in its origin, or made up for the purpose of raising money in the market; and the decision of the court below of course affirms this proposition, "that in the sale of such a note, for a sum so much less than that on its face, as will exhibit a discount beyond the legal rate of interest, the guarantee or indorsement of the note, without a stipulation against the indorser's liability, makes out a case of usury; that it is, per se, an usurious contract between the indorsee and indorser; and no action can be maintained upon it against the indorser. And since the rule is universal, that there can be no usury where there is no loan; it follows, that their decision implies the affirmance of the proposition that such a guarantee or indorsement necessarily implies a loan.

It is necessary to bear in mind that we are not now called upon to consider a case occurring upon the transfer of a note which is, in its origin, a mere nominal contract, one on which, as the test is very properly established in the New York courts, no course of action arose between the original parties. 15 John. 44, 55. The present is a case of greater difficulty, for the principle affirmed in the decision under review, operates indirectly upon a contract not affected by usury; since by leaving the possession of the note in the indorsee who has no cause of action, and the cause of action, if anywhere, in the indorser, who has parted with the possession of the note; it virtually discharges the promissor from liability, although his contract, in its inception, may have been wholly unimpeachable. Yet the rule of law is every where acknowledged, that a contract, free from usury in its inception, shall not be invalidated by any subsequent usurious transactions upon it.

[Nichols v. Fearson et al.]

It will hardly be contended that, although the indorsement gave no cause of action against the indorser, yet it did operate to give a right of action against the maker of the note. The statute declares an usurious contract to be invalid to all intents and purposes whatever.; a valid indorsement is a contract as well of transfer as of provisional liability; and if invalid to the one purpose, it must be equally so to the other.

The courts of New York have got over these difficulties by adjudicating, that whenever the note or bill, in its inception, was a real transaction, so that the payee or promissor might at maturity maintain a suit upon it, a transfer by indorsement on a discount, though beyond the legal rate of interest, shall be regarded as a sale of the note or bill, and a valid and legal transaction. But not so where the paper, in its origin, was only a nominal negotiation. Such is the result of the decisions in Jones v. Haik, 2 Johns. Cases, 60; Wilkie v. Roosevelt, 3 John. Cases, 66; and Munn v. The Commission Company, 15 John. Rep. 44.

It has been argued that the Massachusetts courts maintain the contrary doctrine. But the cases cited will not be found sufficient to bear out the argument. The case of Churchill v. Suter, 4 Mass. 156, was the case of a nominal contract; a note made to be sold in the market, as is admitted in the case stated; the point of usury was not argued; and the opinion expressed by the learned judge, was, at best, but an obiter dictum. However, let that opinion be confined to the res subjecta, and there can be no reason for controverting it in this case. It was the case of a nominal sale, a loan with the disguise of a sale thrown over it.

The case of Bridge et al. v. Hubbard, 15 Mass. 96, was one of a different character, and decided in conformity with another class of cases. It was the case of the substitution of a new contract for a note given for usurious interest due upon previous transactions. The note passed into the hands of innocent indorsees, and the question was, whether it was affected with the taint of the original usury, or only with the want of consideration. And the majority of the court held it to be a security for a loan of money obtained upon usury, and therefore

void in the hands of the present holders. This, of course, is not an adjudication in point.

The case of Lloyd v. Keach, Connecticut Rep. 175, cited from the adjudications of Connecticut, is in point : but it is an authority against the decision under review. The note was given in the course of business; and in a suit brought upon it by the indorsee against the drawer, the inferior court decided that the sale of such a note by the indorser on a discount exceeding the legal rate of interest, was rendered usurious by his indorsement and guarantee, and that the plea of usury was a good bar to a suit instituted against the drawer. But, on an appeal to the supreme court of errors, although there was a considerable diversity of opinion among the judges, a new trial was granted upon the ground that such a transaction was not, per se, usurious; but that its validity must depend upon the bona fides of the transaction, as being a pure unaffected sale or merely a colour for a loan.

Upon a subject of such general mercantile interest, we must dispose of the question according to our own best judgment of the law. And it becomes necessary first to review some of our own decisions which have a bearing upon it.

The first was the case of Levy v. Gadsby, which was an action by indorsee against indorser, upon a note which would seem to have originated in a real transaction, and the defence was usury. But the distinction between that case and the present is, that the defence was not set up in that case upon any interest or discount taken for the transfer of the note, but upon an usurious negotiation for a loan or forbearance with reference to a pre-existing debt, in consideration of which, Gadsby's note was indorsed to the plaintiff; and thus came within the description of " an assurance for forbearance," which is made void by the statute, as well as the contract secured (3 Cr. 180, 1 Condensed Reports, 486); and the usury there was proved not inferred from the guarantee by indorsement.

The case of Gaither v. The Farmers and Mechanics Bank, 1 Peters, 37, was one precisely of the same character with that of Levy v. Gadsby, except that the suit was instituted by the indorsee against the *drawer;* the cause was decided upon the

invalidity of the indorsement to transfer the right of action to that indorsee, not to any other holder, the plaintiff being the party to the usury. An usurious loan had been negotiated, and Gaither's note to Corcoran, the borrower on usury, indorsed in blank by Corcoran, and left with the plaintiff to collect, in payment of the money borrowed. It was therefore a clear case of an *assurance* given for money borrowed on usury; and in no way could a court permit the borrower to avail himself of the indorsement without violating the statute.

We recollect no other case in which this court has been called upon to consider the effect of usury upon the contracts of parties to negotiable paper. We are therefore uncommitted upon the question now before us; and free to decide it, as well upon reason and principle, as upon what appears to us to be the weight of authority.

There are two cardinal rules in the doctrine of usury which we think must be regarded as the common place to which all reasoning and adjudication upon the subject should be referred. The first is, that to constitute usury there must be a loan in contemplation by the parties; and the second, that a contract, which, in its inception, is unaffected by usury, can never be invalidated by any subsequent usurious transaction.

It is true with regard to the first of these canons, that there are cases which necessarily import a loan; and no disguise, no affectation of sale or barter can divest them of that character: such, for instance, as a man's selling his own bond or note, executed, say in blank: and when these cases occur, the law puts the stigma upon them without further inquiry. The instrument having had no virtual existence until the loan or sale was negotiated, could in no wise be regarded as a transfer of property. But he who sells his lands or stock, and takes a note in payment, holds in his hands the representative of property; an entity to which the improvements of society have attached nearly all the rights and characteristics, in equity at least, which were the acknowledged attributes of the property for which it was received. A promise to return the money borrowed, is indeed one among the ordinary indications of a loan; and upon the idea that the contract of an indorser could not be distinguished from a general engagement to repay, have the

[Nichols v. Fearson et al.]

decisions in the Connecticut case and in the court below, in the case at bar, been rendered.    But the grounds of distinction are material, for the contract between indorser and indorsee is at best but a conditional or provisional contract; the indorsement of a business note produces a real transfer of interest, and the indorsement may well be regarded in the light of a guarantee against the insolvency of the promissor.    In the case of an assignment of a bond, with a guarantee against insolvency; which every assignment in Virginia and Kentucky imports; it has been adjudged in both those states that usury does not avoid the effect of the assignment.    That the transfer of the right of action on the bond is complete; and if valid for one purpose, it is presumed it must be so to every one.    Littell v. Herd, Hardin, 81; Hansborough v. Baylor, 2 Munf. 36.

These observations are made to show that the indorsement of this note did not necessarily import a loan.    But we are not to be understood as intimating, that if in a treaty for; or conclusion of *a loan,* the indorsement be. expressly stipulated for as security for repayment, the contract being usurious may not invalidate the indorsement under the character of a security or assurance.    Such was the decision in Gaither's case in this court; and these remarks only go to show that an indorsement, without a stipulation against ultimate liability, does not necessarily imply a case of usury.

And in this we are sustained by the argument ab inconvenienti, or ducitur in absurdum, which would result from the contrary doctrine, if considered with relation to the second canon or general rule respecting usury, as before laid down, to wit:

That a contract free from usurious taint in its inception, is not to be invalidated by any subsequent usurious transaction; since, as has been shown, by converting a sale on a discount into a loan on usury, and thus rendering null and void the act of indorsing it, a contract wholly innocent in its origin, and binding and valid upon every legal principle, is rendered at least valueless in the hands of the otherwise legal holder: and a party to whom the provisions of the act against usury could never have been intended to extend, would be discharged of a debt which he justly owes to some one.

[Nichols v. Fearson et al.]

Such inconsistencies are not to be lightly incurred; it is enough to submit to them when they become unavoidable: but it is easy to assign other and adequate motives for selling a note and then indorsing it, without imputing to the transaction the negotiation of a loan; and it is enough if the imputation be not unavoidable.   The acts against usury were intended to protect the needy; but the holder of a note may be wealthy, may be the lender, not the borrower of money, and yet find an adequate motive both for selling a note and guarantying it. Suppose the debtor absconds, or removes to the Arkansas or the Oregon: the very wealth of the holder may make it no object to follow him or prosecute a suit against him; his freedom from necessity may be the holder's motive for parting with the note to another at a moderate sacrifice; his indorsing it will diminish that sacrifice; and, although removing, the debtor may be wealthy, and the inducement for the indorsement may be the conviction that the debt is safe,—that he will *never* have to repay what he has received.   There could be inferred no treaty for a loan from such a transaction, nor any device to evade the statute.   It is a plain contract of bargain and sale, with a warranty of the soundness of the property.

We have not had leisure fully to explore the decisions of the states on the question, but, as far as we have gone, the great weight of authority is certainly in favour of the validity of the contract under review.

The courts of Kentucky have recognized the validity of such a transfer in a case of admitted usury between the assignor and assignee of a bond.   Littell v. Herd, Hardin, 82.   The courts of Virginia have given validity both to the assignment of a bond and the indorsement of a note, expressly created for sale, and sold at an usurious discount, where there was no proof of a negotiation for a loan.   2 Mumf. 36, and 5 Rand. 33. Those of Maryland also have lent their sanction to the doctrine in the case of Kenner v. Herd, 2 Hen. & Mumf.; and in South Carolina such has long been the established doctrine.   1 Bay. 456; 3 M'Cord, 365.

On the question whether the plaintiff may recover the whole amount of the note, or only according to the value of the con-

[Nichols v. Fearson et al.]

sideration paid; it will be observed, we are not called upon to express an opinion.

Upon the whole, we are of opinion, that upon both reason and authority the law is in favour of the plaintiff; and that the court below erred, both in the instructions given for the defendants, and in refusing those prayed by the plaintiff.

Judgment reversed, and a venire de novo awarded.


This cause came on to be heard on the transcript of the record from the circuit court of the United States for the district of Columbia, holden in and for the county of Washington, and was argued by counsel: on consideration whereof, it is adjudged and ordered by this court, that the judgment of the said circuit court in this cause be, and the same is hereby reversed and annulled, and that this cause be, and the same is hereby remanded to the said circuit court with directions to award a venire facias de novo.