Scott, J.
The facts of this case, essential to a proper understanding of the points considered and determined by the court, are substantially these:
About the 1st of'May, 1846, Otho Hinton, of Delaware, Ohio, who then was, and for some years prior thereto had boon, extensively engaged as a contractor for carrying the mails of the United States, being in want of funds, applied to the complainants — who are bankers- — at their office in the city of Washington, for the purpose of raising money, and submitted to them, in writing, the following proposal:,
“ Messrs. Corcoran & Riggs : — I want to sell you three drafts upon the department, of $6,333 each, in all $20,000 — first, 1st of November, second; 1st of February; third, 1st of May, 1847 — for which
I will take $16,000, as follows : First,
*1 want, 12th inst.............................................$1,224 80
One draft or certificate of deposit, payable at June..... l-,600 00
Do. one certificate of deposit, payable 14th June............. 1,500 00
Do. one certificate payable 14th June........................... 2,500 00
Do. one 15th July..................................................... 2,500 00
Do. one for certificate in favor of the Bank of Delaware,
Delaware, Ohio (1st July).................................... 5,000 00
Do. cash, Virginia or western paper............................ 675 00
Do. one sight draft upon New York............................. 1,000 00
Considerable negotiation followed,- but finally, about the 20th of May, 1846, the parties came to an agreement, in pursuance of, which three drafts were drawn by Hinton on P. G-. Washington, auditor of the post-office department, Washington City, each calling for $6,666.66, and payable'out of his pay for transportation of the United States mails. One of these drafts was dated May 14, 1846 • and was payable to complainants, November 1, 1846 ; the other two were drawn in favor of, and indorsed by Peter Voorhes, and were payable respectively on the 1st February and 1st May, 1847. Voorhes was a mere accommodation indorser. It was, at the same time, agreed that Hinton should further secure the payment of these drafts at maturity, by giving the complainants a lien upon 145 shares of the capital stock of the Delaware County Branch of the State Bank of Ohio, for which he held a certificate, and on which *34, 35 he had paid $9,000. The three drafts were then delivered to complainants, and Hinton received from them, in consideration of the px’emises, $16,000, partly in cash, and partly in certificates of deposit, and drafts payable at sight, or on short time, and at such points as his convenience dictated.
Early in June, 1846, Hinton, in pursuance of the agreement for further security, transferred to complainants his said certificate of stock, and also executed and delivered to thejn a power of attorney, authorizing them to sell and transfer said stock on the books of the 34] bank, with a condition *of defeasance, upon the payment of the drafts at maturity. The Delaware County Bank, of which the defendants, Powers and Williams, then were, and still are, directors, and Powers also cashier, had previously consented that Hinton might transfer his stock to complainants, and had caused an entry to that effect to be made on its books; and had also given Hinton a certificate, under date of June 1, 1846, signed by said cashier, and which Hinton exhibited to complainants, setting forth that Hinton was owner of said stock, had paid $9,000 thereon, that he had full power to transfer it, that, according to the charter and by-laws of the bank, stock could be transferred by power of attorney, that the directors had knowledge that a transfer was about to be made to Corcoran & Riggs, and had made an entry on their books of their consent thereto, and that, on jmesentation at the bank of a power of attorney for that purpose, a transfer would be made on their books and a now certificate of stock issued. Some correspondence ensued, shortly afterward, between complainants and the bank, in which, by way of answer to inquiries on that subject, complainants were informed by the cashier, that the bank had full knowledge of their power of attorney,, and that complainants could, under it, at any time, obtain a transfer of the stock to themselves, by directing the bank to enter the same on its transfer books.
The drafts payable February 1, and May 1, 1847, were each protested at maturity for non-payment, and due notice was given to charge the parties. Hinton failed early in 1847, and is still hopelessly insolvent.
On the 22d of February, 1847, Hinton transferred on the boobs of the bank, and with its assent, and for a good and valuable consideration, the said 145 shares of stock, to the defendants, Powers and Williams, in pursuance of an agreement made by him with 35] them in December, 1846, when *they became sureties for him *36 in large sums, on promissory notes. After the dishonor of the-drafts, complainants forwarded Hinton’s stock certificate and power of attorney to the defendant, Powers, as cashier of the bank, and requested him to transfer the stock to them, which Powers declined doing, and claimed, for himself and Williams, to hold said stock under Hinton’s absolute assignment and transfer to them.
Complainants thereupon filed their bill in the court-of common-pleas of Franklin county, against Powers and Williams, the Delaware Bank, Hinton, and Yoorhes, seeking mainly to subject this-bank stock to the payment of' a large balance still due them on the two protested drafts. Answers were filed by Powers and Williams, and by the Delaware Bank. Hinton failed to answer, and, during the pendency of the cause in the common pleas, filed a stipulation waiving the defense of usury and all other defenses, and consenting that a decree might be taken against him for the sum which might be found due on the drafts. Such decree was accordingly rendered at the March term of said court, 1849.
The answer of the defendants, Powers and Williams, among other matters of defense, avers that the contract between complainants and Hinton was made at Washington City, and to be performed there; that at the time of the making of the. contract, and for a long time before, and ever since, the following statutory provisions were in full force there as law:
“ That no person, upon any contract, shall exact or take, directly or indirectly, for loan of any moneys, above the value of six pounds, for the forbearance of one hundred pounds for one year; and so after that rate for a greater or less sum, or for a longer or shorter time.”
“ That all bonds, contracts, and assurances, whatever, made *for the payment of any principal money lent, or covenant [36-to be performed upon or for any usury, whereupon or whereby there shall be received above the rate of six pounds in the hundred for money, as aforesaid, shall be utterly void,” etc.
The answer charges that Hinton gave the three drafts before-mentioned, amounting, in the aggregate, to $20,000, for a loan of $16,000; that the contract of the parties was corrupt and usurious, in providing for the payment of interest on said loan at a rate-greater than that of six per centum per annum, and was therefore, by force of said statute, utterly void.
After the decree was taken*against Hinton, his deposition was* *37 taken in this cause by the defendants, and on the hearing, complainants obtained a decree in their favor, from which the defendants, Powers and Williams, appealed, and the case was reserved by the district court for decision here.
. We do not deem it necessary to consider any of the points made by counsel in the case, except such as arise from the defense on the ground-of usury. The first and main question arising from this branch of the defense, is, was the contract of complainants with Hinton usurious ? By the statute of Maryland, in force at Washington City, and which, being the lex loci of the contract, must govern the case, all bonds, contracts, and assurances, whatever, whereby there shall be reserved an interest above the rate of six per cent, on money loaned, are declared to be “ utterly void.” Now it can not be doubted that, if the $16,000 was loaned by the ■complainants to Hinton, the contract is void for usury; for the drafts, having an average time of but nine months to run, were discounted at the rate of 25 per cent. — equivalent to 33-J- per cent, per annum. The subject of inquiry, then, is, what was the real 37] character of this transaction ? *Was it a purchase of three bills of exchange, or a loan of money?
The form which the parties may have seen proper to give to their ■contract is by no means conclusive of its real character; for the ■statute may not be evaded by any artifice or device of the parties. The question is, not what-have they called the transaction, but, what do thq facts and circumstances require the court to call it?
In determining the character of contracts of this kind, a distinction is well taken between business and accommodation paper. A bill or note valid in its inception, and furnishing a good cause of .action as between the original parties to it, may be sold as a marketable commodity, at such rate of discount as the parties may think proper, without subjecting the purchaser to the imputation of usury. But it is otherwise, where the bill or note claimed to have been sold is mere accommodation paper, void in its inception, fictitious in its -character as between the original parties, and on which no action could be maintained till after its transfer to a third party. Such is the test established in the courts of New York (15 John. 55), sanctioned by the general current of authorities in other states, and recognized and approved by the Supreme Court of the United States in Nichols v. Fearson, 7 Peters, 103.
Let us apply this test to the case*-under consideration. Hinton *38, 39 is in urgent need of funds; his credit will not enable him to borrow money at the legal rate of interest; and his necessities are such that he is willing to submit to the payment of interest at the rate of 33J per cent. He has no choses in action or evidences of indebtedness-against the post-office department to sell — that department owes-him nothing. He applies to complainants (from whom, as the evidence shows, he has been in the habit, for years, of obtaining advances in a similar manner), and *to procure'$16,000 from them, [38 he proposes to draw and sell to them three drafts on a fund which has no present existence, and which, it is quite possible, may never exist. These drafts are created at the time and for the occasion; they are made payable' to Voorhes, who neither has, nor is expected to have, any beneficial interest in them, for the sole purpose of placing Yoorhes in the legal relation of indorser, and thereby furnishing additional security for the payment of the sums named in the drafts; and the complainants are fully apprised of the fictitious character of the bills as between Hinton and Yoorhes. .
We are satisfied that the application of the test referred to, and which we regard as sanctioned both by reason and authority, requires us to pronounce this transaction at least, prima facie, a loan of moneys, usurious, and, as a contract, “ utterly void ” by the statute. It is, in effect, and in truth, a borrowing of $16,000, for which the borrower and a surety engage to return $20,000, in three equal payments, at six, nine, and twelve months from date; these payments being secured by giving the-lender a lien upon a large amount of bank stock, and what counsel call an “ equitable assignment ” of the pay which may become due to the borrower for future services, to the extent of $20,000.
The legal presumption which arises from the admitted facts in this case, is confirmed by the testimony of Hinton, whose competency as a witness is not questioned. If any credit can be given to his testimony, there is no room for doubt as to the'character of the transaction. If, then, as we hold, the contract itself be void for usury, it is well settled that the securities, being tainted with usury, are also void.
But it is claimed that the defense of usury is personal to Hinton, and can not be interposed by the present defendants, his assignees. We do not think the objection well taken. *This is not the case [39 of the purchase of a mere equity of redemption,- in which the purchaser, by recognizing in the terms of his purchase the incum ■ *40 brance of the mortgage, may be estopped from afterward questioning its validity. But here the assignment is general and unqualified. The defendants claim, under Hinton and in privity with him; and -the contract itself being void for usury, the collection of the tainted -securities can not be enforced either against him or against others who succeeded by assignment or otherwise to .all his rights in the premises. The authorities cited by counsel for the defendants .abundantly sustain this position. Nor is the right of the assignees to set up this defense affected by the fact th.at they took the assignment with full knowledge of complainants’ claim. A contract void for usury can confer on the complainants no rights to be enforced in this court or respected by any one.
We think it clear, upon principle, that the act of Hinton, after the suit brought, in waiving, as to himself, the defense of usury can not affect these defendants, who claim under him by a prior purchase and transfer.
We have only to add, as to the question of variance presented by ■counsel,,that we think the usury proved is substantially the same with that averred in the answer.
The bill must be dismissed.
Brinkerhoee and Bowen, JJ., concurred.
Bartley, C. J., and Swan, J., having formerly been of counsel in this case, did not participate in its decision.