## 11648

### BANK OF AYNOR v. ADAMS *ET AL.*

#### (128 S. E., 168)

Banks and Banking—Evidence Held to Sustain Finding That Consideration in Addition to Loan of Money Passed to Borrower, for Which Money Paid in Excess of Legal Interest Was Consideration Saving Transaction From Taint of Usury.—Evidence that borrower of $10,000 from bank having limited capital, who was unable to make payment on due date, agreed that if bank would sell government bonds which it held, for purpose of procuring needed capital and extend note, he would share the loss which sale of bonds at that time would involve, *held* to sustain finding that a consideration other than mere use of money loaned passed to borrower, for which money paid by him as part of loss sustained by bank on bonds was payment, and that transaction was not usurious.

Before Dennis, J., Horry, November, 1923.   Affirmed.

Action by the Bank of Aynor against W. C. Adams and another.   Judgment for plaintiff and defendants appeal.

The following is the referee's report and Circuit Court's decree:

#### Referee's Report

This action was brought to foreclose a mortgage of real estate; the defendants setting up usury and a counterclaim based on the usury statute.

The sole question to be determined is whether the transaction was tainted with usury either at its inception or subsequently.

I find and report on the question of law and facts as follows:

The mortgage and the obligation which it secured bearing date on May 18, 1920, speaking of the inception of the transaction, which was for the sum of $10,500, the $500 covering the lawful interest or discount added to the small amount of $10 to cover cost of investigating title, stamps, recording fees, and the like.   There was no usury there, and it is not seriously contended by defendants that there was any there.

I find that the defendant, Nettie M. Adams, is a sister of Geo. J. Holliday, the president of the Bank of Aynor, and the defendant, W. C. Adams, is his brother-in-law; that the amount of this loan was large for a small bank; and that this relation had something to do with inducing the bank to make the loan to the defendants. I also find that the loan was not met and that the bank was seriously in need of the money to take care of its own obligations.

On December 17, 1920, with this loan still outstanding, the defendant, W. C. Adams, left with the Bank of Aynor the sum of $1,680. It is in regard to this payment that the whole matter at issue hangs. I find and report that at the time when that sum was paid the little bank needed funds. Adams claimed that in a short time he could pay in full. The bank was after him for the whole amount; of course, there was some doubts in the minds of officers of the bank that he could make good in meeting this debt in full, but there was hope. Adams testified that he could have obtained funds and paid the debt in full. The fact is he did not When the $1,680 was paid, Adams offered it so much on principal, so much on discount for a certain short time. The bank refused to take it that way. The bank could not carry the loan longer for him without disposing of some of its assets in the way of Liberty Bonds. By selling those at less than par and at a distinct loss, as shown by the testimony, the loan might be extended for a considerable period in case Adams should fail in his expectations of getting funds to pay this big debt. I find and report that before the $1,680 was left by him with the bank that all of this was discussed, and he agreed that if he failed to meet the entire debt in a short time so that the bonds would have to be sold, he would in that case bear the loss sustained. I find that the $1,680 was therefore paid with this understanding and agreement on his part, and this sum was credited on the note and mortgage, and a separate receipt was given and accepted, and no entries made on its papers and the money not applied, thus

showing that it was a separate transaction and stood upon
its own feet, and no renewal papers were then fixed up
showing further that this sum of money was to be held in
abeyance awaiting the outcome of Adams' efforts to pay up
in full. The bank did not agree to take the $1,680 any other
way, for the reason that they wanted the whole debt paid,
as aforesaid. If the bank did not have the means with which
to sustain the loan for a longer time and Adams did not
pay the loan off, then the only obvious course the bank could
take would be to start foreclosure proceedings. Being in
the family, as you might say, under the circumstances and
facts as I find them, there could not have been in the minds
of any of the parties any idea or intention of a so-called
bonus or usury, for what the bank wanted and needed most
was the principal of the loan and at the same time was will-
ing to sacrifice valuable assets in order to accommodate the
defendants if that was necessary, and if defendants were
willing to stand the loss in making a sacrifice sale of bonds
which were then going very low and which the bank would
have liked very much to hold. They agreed to stand that
loss, as I find from the testimony, but they finally did * * *
not pay all that loss, as I also find from the testimony that
the Liberty Bonds were disposed of when Adams failed to
pay the debt; that these bonds were sold to the amount of
$11,900 par value, at a loss below said par value of a total
of $1,158.57.

Now, the $1,680 was held as before stated until on Feb-
ruary 23, 1921, this sum was applied as follows:

Interest and discount on new note in evidence
    from February 11, 1921 to February 4, 1922.. $  956.50
Part of loss on sale of bonds................   723.50

    Total ...............................  $1,680.00

I find from the evidence that there was a previous under-
standing and agreement that this sum would be so applied,
and that before it was so applied defendants confirmed such

previous agreement and actually executed and delivered a new note for $10,500 maturing on February 4, 1922. There is a wide difference between the transaction as proved in this case and the ordinary usurious transaction accompanied by either the bold-faced or hidden scheme for extorting unlawful interest. There is nothing in the case which intimates or shows in any way that there was any trick or subterfuge to evade the interest or usury laws; there was neither any evidence of oppression in view of the defendant's ability to have paid in full if we are to take his own testimony. He could have paid if he had chosen to pay, according to what he says in his testimony. Even if he had positively denied having made the previous agreement or having had the previous understanding about the sale of the Liberty Bonds and his bearing the loss if any should be sustained in case they should be sold, yet he admitted on cross-examination that the bonds had been mentioned previously to his paying the $1,680; there is no doubt of the fact that he later acquiesced and to all intents and purposes agreed to stand the portion of the loss that was applied out of that sum of money. He did not positively deny because in his testimony he says: "I do not recall anything about the Liberty Bonds at the time I paid the $1,680. I think this is an error." This Court cannot accept that statement on his part as better evidence than the positive statements of the cashier of the bank and oher officers thereof who leave no doubt as to their memory of the transaction.

I hold this to be a transaction such as that involved in the case of *L. & H. Brook v. Samuel Thompson,* 1 Bailey's Reports, 322.

After the payment of the $1,680, nothing was ever paid by defendants except $3,000 on May 15, 1922, at which time and afterwards defendants failed to sign any renewal note, so that I find that the note for $10,500 of February 11, 1921, maturing February 4, 1922, should be taken as the basis drawing interest at 8 per cent compounded annually

from February 4, 1922, and then apply the $3,000 as a partial payment as of the date it was paid. I find and report that plaintiff is entitled to 10 per cent of all the principal and interest due as attorney's fees.

I therefore find and report that there is due and unpaid on the mortgage and the documents sued on, including interest to date hereof and said fees, a total of $9,373.77 as follows:

Principal and interest of new and last note dated
    February 11, 1921, maturing February 4,
    1922 ................................. $10,500.00
Interest from February 4, 1922, to May 15,
    1922, at 8 per cent...................... 235.67

    Total ............................. $10,735.67
Paid May 15, 1922......................... 3,000.00

    Balance ............................ $ 7,735.67
Interest at 8 per cent 5—15—22 to 5—15—23
    (1 yr.) ............................... 618.85

    New Principal ...................... $ 8,354.52
Interest at 8 per cent 5—15—23 to 8—15—23
    (3 mos.) ............................. 167.09

    Total ............................. $ 8,521.61
Attorney's fee 10 per cent ................ 852.16

                          $ 9,373.77

I also find that plaintiff is entitled to a decree of foreclosure and sale in the usual way to be granted by the Court and to have judgment against both defendants for total amount as herein found due, with interest from the date of this report, as provided by law, and also with the further sum of $25 to pay Geo. Officer for taking testimony and making transcript of same.

The evidence taken (and all of the documents offered in evidence) is herewith respectfully submitted to the Court.

## DECREE

This action was brought by the plaintiff bank to foreclose a mortgage of real estate given by the defendants to secure a loan of the sum of $10,500. The defendants answered the complaint alleging usury and setting up a counterclaim based upon usury.

The sole question to be determined in the action was whether the transaction was tainted with usury either at its inception or subsequently. There was no serious contention on the part of the defendants that there was any usury in the transaction at its inception or when the $10,500 loan was negotiated, the mortgage and the obligation secured by it executed, and the proceeds of the loan obtained by the defendants. It appears to have been admitted that there is no indication of usury upon the face of the mortgage or upon the face of the bond or the renewal note which was given in renewal of the indebtedness in February, 1921.

The cause was referred to W. L. Bryan, Clerk of the Court of Common Pleas, as special referee, and he made his report which was filed on August 15, 1923, finding against the contention of the defendants, holding that there was no taint of usury, and finding that there was due under the mortgage and secured by it, including the interest and attorney's fees to August 15, 1923, the date of said report, the sum of $9,373.77.

To this report the defendants filed exceptions, all embracing the sole question of usury, and admitted at the hearing that this was the only question for this Court to decide. It was admitted that the only sum or amount of money paid by the defendants at any time under this loan that could by any possibility be construed as a usurious payment was the item of $723.50, which is shown by the testimony to be a portion of a loss of $1,158.57 sustained by the plaintiff bank in making sale of Liberty Bonds amounting to the sum of

$11,900 at par, in order to be able to carry the loan for the defendants when it became time to pay or renew it about December, 1920. So that whether or not there was usury depends upon this item of $723.50 shown by the proof as part of the loss sustained by the sale of the Liberty Bonds.

It is proved by the great preponderance of the testimony that when the defendant W. C. Adams applied at the bank to renew this loan, he wanted to renew for a short period of time, to which the bank would not agree, but insisted that they must have the entire principal, and that the bank told Mr. Adams that if they carried this loan for him for more than a very short period it would be necessary for them to make sale of Liberty Bonds which they had placed with other banks as security upon its own obligations, and they would have to sell these bonds at a big loss. The preponderance of the testimony shows to my mind that it was agreed between W. C. Adams and the officers of the bank that if he (Adams) did not pay the entire debt within a short time, and the bank, in order to accommodate him, had to dispose of these Liberty Bonds, he (Adams) would pay a portion of the loss that would be sustained in disposing of the bonds below their par value; that the bank did not accept the payment offered by Adams, as he wanted the bank to take it, but held the payment in abeyance to see if he (Adams) might not take up the entire debt; then later between December, 1920, and the latter part of February, 1921, as shown by the correspondence between the bank and the defendant W. C. Adams, the payment which had been made by Adams and held in abeyance was applied by mutual agreement between them to the renewal of the entire loan for a year, and the application of the sum of $723.50 as a portion of the loss which the bank sustained in the sale of the Liberty Bonds. Under circumstances like these, the bank would not profit. The sum of $723.50 applied as a portion only of the loss on the bonds was not a profit to the bank, but reimbursement for only a part of the loss which it had sustained, and therefore I hold that it could not be a usurious payment.

It is therefore ordered, adjudged, and decreed that the referee's report herein be, and the same is hereby, confirmed, and

It is further ordered, adjudged, and decreed that the plaintiff have judgment against the defendants W. C. Adams and Nettie M. Adams for the sum of $9,373.77, with interest from the date of the said report on August 15, 1923, and also for the costs of the action and the sale as hereinafter directed to be taxed by the Clerk of this Court, and including the sum of $25 as a fee to George Officer, Esq., for taking the testimony in this cause and making up a transcript of the same.

It is ordered further that the mortgaged premises described in the complaint, or so much as may be sufficient to pay the amounts due with interest and costs, be sold at public auction in the County of Horry by W. L. Bryan, C. C. C. P., as special master, upon the following terms, to wit: For cash on salesday in January next or some convenient salesday thereafter, and should the bidder or bidders fail or refuse to comply with any bid that he resell said premises on the same or any subsequent convenient salesday at the risk of the defaulting bidders and without any further order of this Court; that the said master give 21 days' public notice of the time and place of such sale; that the master execute to the purchaser or purchasers a deed or deeds of the premises sold; that out of the proceeds of such sale, after deducting his fees, expenses, and any lien for taxes or assessments, that he pay to the plaintiff's attorney the sum of $500 as attorney's fees and charges in this action taxed by the said clerk with interest from date hereof, and also the amount so reported due as aforesaid, with legal interest from the date of the said report, or so much thereof as the purchase money of the mortgaged premises will pay of the same, take receipt therefor, and file with his report of sale; that he pay over the surplus proceeds of sale (if any) to the Clerk of this Court to be drawn or transferred only on the order of the Court, signed by said clerk and a Judge of the Court within three

months after he receives same; that he make report of such sale and file same with the Clerk of this Court, and if the proceeds of sale be insufficient to pay the amount so reported due to the plaintiff with interest and costs as aforesaid, the master shall specify the amount of the deficiency in his report of sale, and it is ordered that the defendants W. C. Adams and Nettie M. Adams pay the same to the plaintiff; that the purchaser or purchasers, at such sale be let into possession on production of master's deed, and a certified copy of the order confirming report of said sale, or otherwise according to present law.

And it is further adjudged that the defendants and all persons claiming under them, or any or either of them, be forever barred and foreclosed of all right, title, interest, and equity of redemption in the said·mortgaged premises so sold, or any part thereof.

(Description omitted.)

Dated November 10, A. D. 1923, E. C. Dennis, Presiding Judge.

*Messrs. Sherwood & McMillian,* for appellants, cite: *Nature of renewal note:* 104 S. C., 152. *Usury:* 123 S. E., 791; 104 S. C., 152; 88 S. E., 370; 41 S. E., 43; 49 S. C., 345; 44 S. C., 478; 38 S. C., 173; 37 S. C., 88; 192 Fed., 412; 39 Cyc., 918; 39 Cyc., 985.

*Mr. H. H. Woodward,* for respondent, cites: *Usury:* 109 S. C., 264; 104 S. C., 367; 77 S. C., 141; 1 Bailey, 322. *Attorney's fee in usurious transaction:* 109 S. C., 264.

January 5, 1925.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

This is an action on a note and to foreclose a mortgage. The execution of the note and mortgage is admitted, but the defendants set up usury.

The plaintiff admits that the money received, if applied to interest, will make more than 8 per cent, but alleges that the

cash capital of the bank was small and that the loan of $10,-000 made in this case was a very large part of its capital; that the debt was not paid at maturity, and the bank needed the money to pay its own debts; that in order to extend the loan, it was necessary to sell some United States bonds at a great sacrifice, to wit, 15 per cent below the face value of the bonds; that there was an agreement between the plaintiffs and the defendants that the bonds should be sold and the loss sustained should be divided between the plaintiff and the defendants. This agreement was denied by the defendants, and upon that issue the case went to trial. The case was referred to a referee, who found that the contract had been made and the sum paid was for the loss on the sale of the bonds and not usurious. The case was heard on appeal from the findings of the referee, and the report of the referee was sustained by the trial Judge.

This appeal is from the decree of Judge Dennis. The appellants in their arguments make this statement of the issue before this Court:

"It is plain in the instant case that the only real question involved is whether the plaintiff bank performed some additional service, or incurred some additional expense, for the benefit of the borrower, over and above the use of the money, for which service or expense the sum of $723.50 was a reasonable payment. If such additional consideration was not given to the borrower and he is given nothing except the use of the money lent, then the payment of that sum must necessarily be referred to extra compensation for the use of the money, or to the payment of usury."

The referee and Circuit Judge find that there was such additional expense, and the testimony abundantly sustains their findings. Let the report of the referee and the decree of Judge Dennis be reported.

Some confusion has arisen as to the amount of the attorney's fee. It was agreed at the hearing that only $500 attorney's fee is claimed.

Let this correction be made, and, when so made, the judgment appealed from is affirmed.

MESSRS. JUSTICES WATTS, COTHRAN and MARION concur.

MR. CHIEF JUSTICE GARY did not participate.