[Civ. No. 9115. First Appellate District, Division Two.—July 30, 1934.]

LOU H. ROSE, Appellant, v. CLAYTON E. WHEELER, Respondent.

218

Meserve, Mumper, Hughes & Robertson, Baldwin Robertson and Hewlings Mumper for Appellant.

Livingston & Livingston for Respondent.

NOURSE, P. J.—In the year 1927 the plaintiff was a real estate broker operating in Los Angeles. The defendant was a physician practicing in San Francisco. The plaintiff approached the defendant and asked for a loan of $12,500.

The defendant informed him that he had no money to loan; that his assets were pledged to a San Francisco bank as security for a loan from the bank. At the suggestion of the plaintiff an express contract was entered into whereby the plaintiff agreed to purchase from the defendant on credit, and at cost to the defendant, so much of this pledged stock as, when sold on the public market, would net plaintiff the sum of $12,500. Under this agreement an official of the bank selected the shares of stock to be sold, arranged for the sale, and charged the plaintiff $17,506.25, which represented the cost to defendant of those shares. The plaintiff thereafter in writing confirmed the transaction and acknowledged his indebtedness in the amount so charged to him. In February, 1929, the plaintiff commenced this action, alleging that the transaction was a loan of $12,500 and that the excess was a bonus within the inhibitions of the Usury Act for which he claimed treble damages.

The cause was tried before the court sitting without a jury and, after a thorough and painstaking trial, the court made its findings that the transaction was a *bona fide* sale and not a loan and that the broker did not pay the defendant in money, but procured a real estate company to transfer to the defendant certain equities in encumbered real property subdivisions ''of problematical marketability and speculative value''. In support of the judgment for defendant the learned trial judge prepared and filed a written opinion which fully covers all the issues tried and which we adopt as the opinion of this court:

''The question in this case is whether the transaction between the parties resulted in usury.

■ ''The notes executed by plaintiff to defendant, dated March 19, 1927, bear interest only at the rate of 7 per cent per annum, payable semi-annually. Hence the transaction is not usurious on its face; and it is for the court to determine from all the facts and circumstances whether the method by which plaintiff procured assistance from defendant operated as a violation of the usury law.

■ ''In a usurious transaction, there must be a loan of money, which is to be repaid to the lender, with compensation for its use in an amount constituting a charge in excess of the highest permissible rate. And as a necessary concomitant there must exist the corrupt intent to exact the

illegal charge for the use of the money lent. (*Lamb* v. *Herndon*, 97 Cal. App. 193, 197 [275 Pac. 503].)

"The presumptions of law are in favor of legality; and therefore if the transaction in question is open to two constructions, one making for legality, the other for illegality, then in the absence of evidence pointing clearly to usury, it is the duty of the court to adopt the construction in favor of lawfulness. (*Coley* v. *Wolcott*, 103 Cal. App. 140 [284 Pac. 241]; *Shelley* v. *Byers*, 73 Cal. App. 44, 57 [238 Pac. 177].)

"In the present case the plaintiff contends that he borrowed from the defendant $12,500, agreeing by his notes to pay therefor $17,506.25 with interest until paid at the rate of 7 per cent per annum, payable semi-annually. He further contends that he actually paid in addition to the amount borrowed the sum of $6,629.94 for use thereof, and prays for judgment against defendant in treble this amount, or $19,889.82, together with interest thereon from August 4, 1928.

"The contention of the defendant is that the transaction was not a loan of money, but a sale of certain corporate stock to plaintiff upon credit, and further that defendant has not even yet been able to realize the return of any of his money.

"If there was a *bona fide* transaction of purchase and sale, and not a loan or forbearance of money, the usury law has no application. (*Verbeck* v. *Clymer*, 202 Cal. 557, 562, 563 [261 Pac. 1017]; *Lagorio* v. *Yerxa*, 96 Cal. App. 113, 116, 117 [273 Pac. 856].)

"The fundamental question is, then, whether plaintiff really executed his notes to defendant for money borrowed, or for the purchase price of stock acquired from defendant.

"The evidence presents the following situation to my mind: Rose and Wheeler were close friends, Rose being a real estate broker in Los Angeles, and Wheeler a physician practicing in San Francisco and making also periodical professional visits to Los Angeles. Rose was in need of $12,500; and seeking out his friend Wheeler, then on one of his visits to Los Angeles, endeavored to persuade Wheeler to lend him that amount. Wheeler was not a money lender and had not the ready money. He owned, however, certain stocks, which were held in pledge by his bank in San Fran-

cisco as security for a large indebtedness of his own. These stocks could not then be sold at the ruling prices, except at a considerable loss; and though Rose kept pressing for a loan, Wheeler was averse to subjecting himself to the loss that would ensue. Thereupon Rose, whose previous activities had engendered a nimbleness of mind, proposed to buy at cost to Wheeler enough of Wheeler's stocks to supply Rose with $12,500 net upon sale of the stocks for his account, and to execute to Wheeler a promissory note for the amount representing his resulting indebtedness to Wheeler for the stocks so taken. The note was to be secured by a secondary deed of trust of certain realty, which Rose stipulated should not be recorded, and also by 75 shares of stock of Rose's brokerage company. To this arrangement Wheeler assented after he had returned to San Francisco accompanied by Rose, and they had together conferred with Wheeler's counsel and with the official at Wheeler's bank who had charge of his pledge account. The bank selected such of Wheeler's stocks as it was willing to release for sale to accomplish Rose's purpose, without jeopardizing its own position as a creditor of Wheeler; and the stocks so released were then sold through the bank for the benefit of Rose. To produce the net amount of $12,500 required by Rose and duly received by him from the proceeds of sale, stocks were thus sold in the market, at prices so much under their cost to Wheeler as to create an indebtedness in his favor of $17,506.25 on the part of Rose. Accordingly, Wheeler was provided by his counsel with a promissory note in this amount, bearing interest at 7 per cent per annum, to be executed by Rose, together with the deed of trust as agreed. When these papers got into Rose's hands, however, he assumed, without the attorney's knowledge, to substitute for the note prepared two notes drafted by himself, one for $12,500 and the other, which in this action he dubs a bonus, for $5,006.25. He changed also the deed of trust so that instead of securing an indebtedness of $17,506.25, it was made to recite an indebtedness of only $12,500. This alteration was made without being brought to Wheeler's attention, and was not observed by him. Rose now insists that the transaction so proposed by himself was nothing but a loan, and was conceived and carried out with the corrupt intent, and with the effect, of exacting usury of him. This con-

tention is in contrast with Rose's letter of March 19, 1927, transmitting the two notes to Wheeler, and saying that he was delivering them 'as evidence of my indebtedness covering purchase price of certain corporation stock which I have purchased from you at the price originally paid by you for said stock, and I hereby acknowledge my indebtedness to you in said sum'. Such having been Rose's own written declaration at the time, the burden is now upon him to show that what he himself wrote was not true when he uttered it. If he then correctly described the transaction, his present complaint is destitute of merit. For a *bona fide* sale, whatever the price, imports no usury. Thus in Tyler on Usury, page 92, it is said:

" 'But there can be no usury where there is no debt contracted upon the loan of money. The rule is simple and decided, that the transaction must be one involving the loan or forbearance of money. A person °may sell his credit, his responsibility, his goods or his lands; and if he deals fairly, he may take as large a price for either as he can get, and there can be no usury in the case. The authorities are clear and explicit that to constitute usury there must be a loan, directly or indirectly, and that a real sale, without any intent to loan, though it may be oppressive, cannot be usurious. The inquiry often arises, whether the transaction was a real sale in the regular course of business, or a colorable sale, with intent to disguise a loan, and evade the statute against usury; but if the case is proved to be that of a sale, and not a loan, the courts uniformly hold that usury cannot attach, and indeed, a sale can in no case be *prima facie* evidence of usury; for it is valid unless it be a loan in disguise, and the burden of proof lies on the party claiming it to be usury, and it is necessary for him to show the circumstances which bring it within the statute.'

"The distinction between usury and a purchase at the seller's price, exorbitant though it may be, is likewise emphasized in *General Motors Accept. Corp.* v. *Weinrich,* 218 Mo. App. 68, 77, 78 [262 S. W. 425], where the court speaks thus:

" 'However, it is necessary to clearly keep in mind just what usury is, and what is necessary to constitute it. Usury is the exacting, taking or receiving of a greater rate than is allowed by law, for the use or loan of money. In order

for a transaction to be usurious there must be in it a loan at more than the legal rate of interest, or the exaction of a greater than the legal rate for the forbearance of a debt or sum of money due (*Struthers* v. *Drexel,* 122 U. S. 487, 496 [7 Sup. Ct. 1293, 30 L. Ed. 1216]; *Moncure* v. *Dermott,* 13 Pet. (U. S.) 345, 356 [10 L. Ed. 193]; *Coast Finance Corp.* v. *Powers Furn. Co.,* 105 Or. 339 [209 Pac. 614, 615, 24 A. L. R. 855]). "In order to constitute usury there must be an express or implied loan . . . In the absence of a loan there can be no usury. Usury is not predicable of a purchase" (*State* v. *Boatmen's Savings Institution,* 48 Mo. 189, 193). In *Nichols* v. *Fearson,* 7 Pet. (U. S.) 101, 108 [8 L. Ed. 623], it is said: "There are two cardinal rules in the doctrine of usury . . . The first is that to constitute usury, there must be a loan in contemplation of the parties; and the second that a contract, which, in its inception, is unaffected by usury, can never be invalidated by any subsequent usurious transaction.".

" 'It is true, a loan may be cloaked in the outward form and appearance of a purchase, in which case that will not change the substance of the transaction nor hide the usury. But if there is a real and *bona fide* purchase, not made as the occasion or pretext for a loan, the transaction will not be usurious even though the sale be for an exorbitant price, and a note is taken at legal rates, for the unpaid purchase money. The reason is that the statute against usury is striking at and forbidding the exaction or receipt of more than a specified legal rate for the hire of money and not of anything else; and a purchaser is not like the needy borrower, a victim of a rapacious lender, since he can refrain from the purchase if he does not choose to pay the price asked by the seller. So that a sale in good faith of property, merchandise, or of an indorsement or guaranty, or even of credit, if the seller has no other interest in the transaction, is valid and not open to the objection of usury whatever the price (*White* v. *Anderson,* 164 Mo. App. 132, 136 [147 S. W. 1122]).'

"And in *Jackson* v. *State,* 5 Ga. App. 177, 183 [62 S. E. 726], the court, referring to certain statutory inhibitions aimed at the prevention of usury said:

" 'It is only when these things, otherwise legitimate and valid, are used as devices for the exaction of usury beyond

this fixed amount that they fall within the prohibition of the act. The legislature never intended to revolutionize the general law on the subject of sales of real property, or the right of every man to sell what he owned for any price he desired, or to prohibit any man from buying any sort of property for any price for which he could purchase. ''The policy of our law is against restrictions upon the alienation of property. It is woven in the warp and woof of all our laws concerning the disposition of property, that an adult shall be unrestricted in the disposition of his property.'' (*Singleton* v. *Close*, 130 Ga. 720 [61 S. E. 724].)'

"Likewise in *Blackmore Inv. Co.* v. *Johnson*, 32 Fed. (2d) 433, involving the usury law of this state, Judge Gilbert declared: 'The authorities fully sustain the proposition that the sale of one's property for whatever price, no matter how unconscionable it may be, does not of itself constitute usury.'

"The language of the court is to the same effect in *Philadelphia Warehouse Co.* v. *Seeman*, 7 Fed. (2d) 999, affirmed in 274 U. S. 403 [47 Sup. Ct. 626, 71 L. Ed. 1123].

▇ "The real test, of course, is whether there is in very truth a sale, or merely a pretense of sale to disguise a loan in evasion of the usury law. To infect a transaction with the taint of usury, there must exist the corrupt purpose on one side to lend money at usurious interest and on the other side to borrow on usurious terms dictated by the lender.

"Counsel on both sides have cited cases in support of their respective contentions; and in each case the decision has naturally rested upon the findings as to the good or bad faith exhibited in the transaction. This is illustrated in two Minnesota cases reaching, upon their facts, opposite conclusions.

"In *Barry* v. *Paranto*, 97 Minn. 265 [106 N. W. 911, 7 Ann. Cas. 984], the defendant, needing money, sought aid from his neighbor, the plaintiff, who had a stock of wheat. The transaction took the form of a sale of wheat to the defendant at an exaggerated price, and the defendant then by selling at the current price obtained the money he needed. The transaction was upheld at a *bona fide* sale. But in a later case, *Trauernicht* v. *Kingston*, 156 Minn. 442 [195 N. W. 278], the finding was that what was really a

loan of money was put in the guise of a sale of stock to conceal a usurious purpose; and accordingly the court pronounced the transaction tainted with illegality.

"Another case worthy of notice is *Stevens* v. *Staples,* reported first in 64 Minn. 3 [65 N. W. 959], on an appeal from an order overruling a demurrer to an answer, which set up a defense to the complaint charging usury, and again in 69 Minn. 178 [71 N. W. 929], on an appeal from a judgment in favor of the defendant after trial on the merits. On the first appeal, dealing with the defense pleaded, the court held that if the agreement between the parties, requiring the plaintiff to indemnify the defendant for his loss in submitting to sacrifice of his securities, in order to get the money to lend to the plaintiff, was not merely a device to evade the usury law, then the loan was not usurious; and that the question was one of fact, depending on the intent to be ascertained at the trial. Thereafter upon the trial of the case, the trial court found that the transaction was not usurious; and on the second appeal that conclusion was held to have been justified by the evidence.

"The plaintiff lays stress on two cases from New York, *Van Tassell* v. *Wood,* 12 Hun (N. Y.), 388, and *Quakenbos* v. *Sayer,* 62 N. Y. 344. In the Van Tassell case, the trial court had found that the transaction was not usurious. That judgment was reversed on appeal to the General Term, whose decision is reported in 12 Hun (N. Y.), 388. An appeal was then taken from that decision to the Court of Appeals, which in 76 N. Y. 614, reversed the judgment of the General Term, and thereby affirmed the judgment of the trial court, upon the ground that the evidence in the case was sufficient to justify the finding that the transaction was not usurious. In the Quakenbos case, there had been a trial before a Referee who had found that there was a sale in good faith, but the Referee's judgment was reversed on appeal to the General Term, which ordered a new trial; and its action in ordering a new trial was then affirmed by the Court of Appeals.

"The decisive question in all such cases is the disclosed intention of the parties; and intention is a question of fact. Rose on his own initiative entered into a contract which he found later to be unprofitable; but Wheeler is not for

that reason to be adjudged a usurer. (*Terry Trading Corp.* v. *Barsky,* 210 Cal. 428 [292 Pac. 474].)

"A case comparable to the present case is *Greenhow's Admx.* v. *Harris,* 6 Munf. (20 Va.) 472 [8 Am. Dec. 751], where a merchant in need of money entered into an arrangement with the owners of a large amount of bank stock, whereby from time to time he obtained a quantity of stock on his secured note, and then realized the money he needed by selling the stock at a lesser price for cash. In one instance, instead of taking the stock certificate himself, the merchant took merely an agreement for the delivery of the document on demand. That agreement he transferred a few days later to a purchaser from him, and on presentation of the assigned agreement the purchaser obtained the stock certificate directly from the original sellers. It was held that the various transactions for purchase of the stock on credit did not cloak a usurious intention, there being no combination between the parties originally selling the stock on credit and the person to whom their buyer sold in turn for cash.

"Other cases tending to support defendant's contention, some of them cited by plaintiff, some by defendant, are the following: *Snow* v. *Nye,* 106 Mass. 413; *Kneese* v. *Parnell,* 134 S. C. 207 [132 S. E. 620]; *Bank of Aynor* v. *Adams,* 132 S. C. 107 [128 S. E. 168]; *Brockenbroughs Excrs.* v. *Spindle,* 17 Gratt. (58 Va.) 21; *Kelley* v. *Sprague,* 58 Hun, 611 [13 N. Y. Supp. 64]; *Armstrong* v. *Freeman,* 9 Neb. 11 [2 N. W. 353]; *Washburn* v. *Rider,* 2 N. Y. City Ct. 127; *Comstock* v. *Wilder,* 61 Iowa, 274 [16 N. W. 108].

"My conclusion is that the transaction was not tainted with corruption, and that it was verily a sale of stock and not a loan of money.

"The sale having been made wholly on credit, Wheeler cannot be charged with taking usury because the price fixed exceeded the current cash price of the property sold. (*Verbeck* v. *Clymer,* 202 Cal. 557, 563 [261 Pac. 1017]; *Berger* v. *Lodge,* 90 Cal. App. 19, 21 [265 Pac. 515]; *Murphy* v. *Agen,* 92 Cal. App. 468 [268 Pac. 480]; *Pacific Finance Corp.* v. *Lauman,* 95 Cal. App. 541, 544 [273 Pac. 48]; *Lagorio* v. *Yerxa,* 96 Cal. App. 111, 117 [273 Pac. 856].)

"While Rose's notes were ultimately surrendered to him, what Wheeler received for them was not money, but fractional interests in encumbered real estate subdivisions or lots in or about Los Angeles, in which Rose's company had been interested. To acquire even these interests, Wheeler had to provide an additional sum of $13,000 and obligate himself to pay a further sum of $16,000. The marketability of the property received is problematical and the value speculative. So Wheeler's money is still at hazard.

"To subject Wheeler to payment of the demand made by Rose in this action would, in the language of the court in *Baker* v. *Butcher,* 106 Cal. App. 358 [289 Pac. 236], 'convert the wholesome purpose of the usury law into an engine of injustice'.

"And as is said in *Clemens* v. *Crane,* 234 Ill. 215, 238, 239 [84 N. W. 884], quoted approvingly in *In re Mansfield Steel Co.,* 30 Fed. (2d) 832, 833, 'Where a transaction is susceptible of an innocent construction and can only be held usurious by wresting it from its relation to other facts or by imputing to the facts a sense and meaning which they cannot reasonably bear, it is the plain duty of the court not to decree a forfeiture but to uphold the contract and enforce its obligation.' "

 Aside from the questions discussed in the foregoing opinion, the appellant argues that we should reject the finding of the trial court that the transaction was in fact a sale because there is no evidence to support it. What he means is that there is a conflict in the evidence arising from his own testimony. But a reference to the opinion will disclose why the trial court did not accept that testimony. The only rule of law involved in this branch of the case is that when a contract is honest on its face the existence of an usurious intent is ordinarily a question of fact for the court or jury and that it is only when the undisputed evidence shows usury that the question becomes one of law. (*O. A. Graybeal Co.* v. *Cook,* 111 Cal. App. 518, 528, 529 [295 Pac. 1088].)

 Finally it is argued that the trial court erred in the admission and rejection of testimony in 108 separate instances. The appellant concedes that "some of these assignments, when taken singly, could not be urged to be prejudicial error". But he does not point to any one of

them which he claims to be prejudicial, and does not argue in support of these assignments. It would serve no purpose to discuss them. Our examination of the record satisfied us that the case was fairly and fully tried and that the judgment rests on findings of fact which in turn rest on the credibility of the witnesses heard.

The judgment is affirmed.

Sturtevant, J., and Spence, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 27, 1934.